Justino Lugo VEGA, Appellant,

v.

THE Steamship MALULA, her engines, boilers, etc., and Oscar G. Abello Ameller, Appellee.

No. 18469.

United States Court of Appeals
Fifth Circuit.

June 16, 1961.

**416**

Harvey B. Nachman, San Juan, P. R., Golenbock, Nachman & Feldstein, San Juan, P. R., for appellant.

Earl D. Waldin, Jr., Miami, Fla., Smathers, Thompson & Dyer, Miami, Fla., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This appeal tests the correctness of the District Judge's decision holding that in this admiralty cause for personal injuries the libel should be dismissed for laches by reason of inexcusable delay and resulting prejudice.

There was a hearing on the merits of the defense of laches. Both parties were afforded full opportunity of offering whatever evidence might be relevant and available. This obviously wise course had two principal advantages. First, it enabled an overburdened, over-worked, congested metropolitan court to decide the actual merits of a severable impediment to recovery on the main claim without the waste of a full blown trial on that claim if the special plea were sustained. Second, it eliminated the problem—nearly always unsatisfactory especially in admiralty where its traditional liberality of procedure seeks out the intrinsic justice of a cause with slight concern for procedural niceties—of trying to determine laches on the basis of the face of the allegation of the libel. This route, exemplified by Morales v. Moore-McCormack Lines, Inc., 5 Cir., 1953, 208 F.2d 218, 1954 A.M.C. 87; McDaniel v. Gulf & South American Steamship Co., 5 Cir., 1955, 228 F.2d 189, 1956 A.M.C. 105, has its obvious difficulties. If the plea is sustained initially, it frequently means that the legal sufficiency of a supposed state of facts must first be determined by trial and then appellate court. Thereafter, if reversed, it is followed by a trial and possible appeal on the actual facts which might turn out to be something quite different from the pleader's picture. These practical difficulties have given rise to the working presumption with its built in burden of proof that in the absence of extraordinary circumstances excusing delay and negativing prejudice, passage of time beyond the analogous statute of limitations is presumed to have caused a prejudicial detriment. A hearing on the merits of the plea enables the court on the basis of the whole record to determine the underlying rightness of it without regard to which of the two parties may or may not have the burden of proof, of going forward, or of persuasion. In a tight, close case that legal burden may, of course, be decisive. But ordinarily, as here, it is neither a shoal nor a haven.

There was most certainly great delay in filing the cause. The injury occurred January 14, 1954, and the libel was not filed until March 27, 1959. But the five-year period is the beginning, not the end, of the problem. And to the complex variables of maritime litigation there must be added here the elements which

make admiralty a world-wide concern. The libellant is a Puerto Rican longshoreman who was injured in the Port of Ponce while loading cement on the SS MALULA, a Honduranian vessel owned by the Cuban respondent. The libel was filed in the District Court of Florida where the owner, a Cuban national, now resides.

Several factors compound the ordinarily difficult problems of tolling local limitations statutes during the absence from the jurisdiction of the party being pursued. First, under Puerto Rican law, an injured workman has one year following the date of the final decision of the Workmen's Compensation Administrator in which to file a third party case. 11 L.P.R.A. § 32. Here this award was made on September 17, 1956.[1] However, before that date the vessel was sunk on August 25, 1956, so that there was no opportunity thereafter for a libel *in rem*. More than that, when looked upon in terms of actual practicalities, the substantive existence of even a potential third party case was a very, very recent event. In the preceding June the First Circuit in Guerrido v. Alcoa Steamship Co., 1 Cir., 1956, 234 F.2d 349, 1956 A.M. C. 1658, overruled its long-time precedent of Lastra v. New York & Porto Rico S. S. Co., 1 Cir., 1924, 2 F.2d 812, 1925 A.M. C. 121, which held generally that the substantive admiralty law of the United States was inoperative in the navigable waters of Puerto Rico. Gomez v. S.S. Dorothy, D.C.Puerto Rico 1959, 183 F. Supp. 499, at pages 512–513, 1960 A.M.C. 82. Until Guerrido so long as Lastra stood, injured maritime Puerto Rican workers could not reap the benefits nor contribute to the expansion of the Sie-

racki and Hawn concepts which have now become a major phase of maritime jurisprudence.[2]

This sets the stage for the contest which thus far seems to have preoccupied the parties and the trial court. This has been the assertion or refutation of an intricate pattern of limitation statutes with their respective built in reciprocal tolling and barring provisions as though the libellant's rights necessarily depended on the suit being brought within the time permitted by such reconstructed system and as though respondent would necessarily prevail if the suit were brought after such time.

From the libellant's approach this is the way the choice-of-laws maze runs. The libel having been instituted in Florida and there being no applicable federal statute, the statutes of limitation in that state will determine whether the action is time-barred. LeGate v. The Panamolga, 2 Cir., 1955, 221 F.2d 689, at page 690, 1955 A.M.C. 1187; Tesoriero v. The M. S. Molda, 2 Cir., 1956, 232 F.2d 311, 1956 A.M.C. 836; Moore v. Palmyra Compania Naviera, S.A., 5 Cir., 1958, 253 F.2d 712. Under Florida law that period for negligence is four years, F.S. § 95.11 (4), F.S.A., and for unseaworthiness is perhaps three years. F.S. § 95.11(5) (e), F.S.A. But this does not help since the libel was filed, not within such times, but over five years after the occurrence. That obstacle is circumvented by the tolling provision of the Florida statute, § 95.07, which provides in substance that time is tolled during the absence of the defendant. The respondent is a Cuban national and has not been present in Florida until recently. But that is of little help since one must take the bitter

---

1. The Industrial Commission allowed him to reopen the case on March 19, 1958, after which a final decision was rendered April 7, 1958, confirming the earlier award of September 17, 1956. In the disposition we make of the case it is unnecessary for us to determine whether the one-year period for suit did not commence to run until April 7, 1958.

2. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099,

1946 A.M.C. 698; Pope & Talbot v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143, 1954 A.M.C. 1; Gilmore & Black, Law of Admiralty §§ 6–1—6–64 at 248–394; Baer, At Sea with the United States Supreme Court, 38 N.C.L.Rev. 307 (1960); Currie, Federalism and Admiralty, The Devil's Own Mess, The Supreme Court Review, p. 158 at 183 (1960).

with the sweet and under the borrowing provision of the Florida statute, § 95.10, reference must be made to the statutes of limitation of Puerto Rico since no action may be maintained under Florida law on a cause of action arising outside of the state which is barred in the jurisdiction in which it arose. But that is not fatal because such borrowing statutes incorporate by reference not only the time periods but the tolling provisions of the foreign limitation statute as well. Baez-Geigel v. American Foreign Steamship Corp., D.C.S.D.N.Y.1959, 171 F. Supp. 359, at page 361, 1960 A.M.C. 331. Crossing the Gulf and Caribbean Sea from Florida to Puerto Rico on this juridical conflicts voyage, cf. United Services Automobile Ass'n v. Russom, 5 Cir., 1957, 241 F.2d 296, at page 298, brings the libellant back to where he started—where he was injured. The Puerto Rican statute specified a period of one year after the workman's compensation award becomes final. But this will not suffice since that period expired September 17, 1957 (see note 1, supra). To overcome this, libellant then resorts to the tolling provision of the Puerto Rican statute which suspends the statute during the time the potential defendant or res is absent from Puerto Rico. Title 32 L.P.R.A. § 253; Baez-Geigel v. American Foreign Steamship Corp., D.C.S.D.N.Y.1959, 171 F.Supp. 359, at page 361, 1960 A.M.C. 331. During the period from September 17, 1956, the vessel, of course, never returned since she had sunk a month earlier. And respondent, either personally or through other vessels or representatives, was present in Puerto Rico for but a few days on a limited number of occasions so that there remained a comfortable margin of days in the year's time which were tolled by absence of the respondent.[3]

To this intricate structure respondent took the position that the record did not adequately show absence of respondent from Florida to toll the Florida statute. Respondent's brief as well as the trial court's findings ignored the tolling provision of the Puerto Rican law [4] and presumably stood flatly on the general proposition that detriment to the adverse party may be presumed from delay in excess of the analogous state of limitation when shown on the face of the pleading and when not overcome by adequate proof. McGrath v. Panama R. Co., 5 Cir., 1924, 298 F. 303, 1924 A.M.C. 1328.

■ We think all have been too mechanically preoccupied with the element of delay in the sense of time beyond some applicable statute of limitations. No attention has been paid to the equally important element of harm from the delay. "Laches is much more than time. It is time plus prejudicial harm, and the harm is not merely that one loses what he otherwise would have kept, but that the delay has subjected him to a disadvantage in asserting and establishing his claimed right or defense." Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co., 5 Cir., 1958, 261 F.2d 861, at page 865, 1959 A.M.C. 148; see Claussen v. Mene Grande Oil Co., 3 Cir., 1960, 275 F.2d 108.

■■ The matter is more than a reference to statutes of limitations. "Though the existence of laches is a question primarily addressed to the discretion of the trial court, the matter should not be determined merely by a reference to and a mechanical application of the statute of limitations. The equities of the parties must be considered as well. Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued

---

3. On March 13, 1958, suit was instituted against respondent in the United States District Court for Puerto Rico but dismissed on motion of Ponce Cement Corporation on the ground that respondent was not amenable to suit in Puerto Rico.

4. Cf. Bournias v. Atlantic Maritime Co., Ltd., 2 Cir., 1955, 220 F.2d 152, 1955 A.M.C. 523, where, as pointed out by the criticism in Black & Gilmore, supra, at 635-6, of the tests evolved by then Judge, now Mr. Justice, Harlan, the Court failed to mention the local borrowing provision.

from the mere passage of time, there should be no bar to relief." Gardner v. Panama R. Co., 1951, 342 U.S. 29, at page 30, 72 S.Ct. 12, at page 13, 96 L.Ed. 31, 1951 A.M.C. 2048; see Annotation 96 L.Ed. 37; Gilmore & Black, Law of Admiralty §§ 9–80—9–82 at 630–37. This was reiterated recently in a case reversing the automatic application of state statutes of limitations to bar a libel filed seven years after the occurrence. "It is well settled, however, that laches as a defense to an admiralty suit is not to be measured by strict application of statutes of limitations; instead, the rule is that 'the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case.' The Key City (U.S.) 14 Wall. 653, 660, 20 L.Ed. 896, 898. In cases where suit has been brought after some lapse of time, the question is whether it would be inequitable, because of the delay, to enforce the claim. * * * This does not mean, of course, that the state statutes of limitations are immaterial in determining whether laches is a bar, but it does mean that they are not conclusive, and that the determination should not be made without first considering all the circumstances bearing on the issue." Czaplicki v. S.S. Hoegh Silvercloud, 1956, 351 U.S. 525, at page 533, 76 S.Ct. 946, at page 951, 100 L.Ed. 1387, 1956 A.M.C. 1465.

On the surface the respondent made a plausible showing of prejudice. Years had gone by. The vessel was sunk and the equipment in question was long since lost. Finally, a seaman who was responsible for maintenance of this cargo gear was no longer living. The trouble was that this did not make any difference. The respondent through his responsible representatives knew not only of the occurrence but knew as well that it was a patent case of unseaworthiness as to which it had no defense on liability.

At the time of injury libellant was working as a longshoreman loading cement in the Port of Ponce. While doing the work in the hold of the S.S. Malula,

he was hit by a 15-pound sheave which fell from a cargo block approximately 30 feet above him. The sheave came out of the block when the pin unaccountably slipped out. By answers to formal interrogatories propounded by libellant and the deposition of the owner-respondent, it was established without contradiction that the accident occurred in this manner, that the pin slipped out of the block while it was undergoing its normal expected use in cargo operations, and that report to the owner's office of the incident was made by the master within a few days at the end of the voyage. True, nothing was done about it until the libel was filed five years later, but the basic fact was known and an investigation would have confirmed what was disclosed by the contemporaneous investigation then made by the Workmen's Compensation Administration. Confirmed also would have been the serious nature of the injury sustained. These included a fracture of the skull. Libellant was hospitalized two months and was under continuous medical care until September 1956, part of which was at a mental institution. At that time the compensation award fixed his permanent disability at 50%.

■ The event occurred. The block failed. The block failed while being used for a normal expected purpose. That is, and has been, at least since Sierazki in 1947, a classic case of patent unseaworthiness. The passage of time has but made the warranty of seaworthiness more awesome as it extends to gear used without regard to ownership and to transitory conditions. Alaska Steamship Co. v. Petterson, 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, 1954 A.M.C. 860; Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 2d 413, 1959 A.M.C. 580; Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941, 1960 A.M.C. 1503; Pope & Talbot v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143, 1954 A.M.C. 1; Rogers v. United States Lines, 1954, 347 U.S. 984, 74 S.Ct. 849,

98 L.Ed. 1120, 1954 A.M.C. 1088; Gilmore & Black, Law of Admiralty, § 6–41 at 322–332, § 6–53 at 358–374; Baer, At Sea With the United States Supreme Court, 38 N.C.L.Rev. 307 (1960). How the pin happened to slip out is of no real legal significance. No matter how much care was used either by the owner, the ship's crew, or the deceased crew member immediately responsible for its maintenance, the failure of the block under normal expected use visits on the vessel owner an unremitting liability based on the breach of the absolute duty. Michalic v. Cleveland Tankers, Inc., 1960, 364 U.S. 325, at page 327, 81 S.Ct. 6, at page 9, 5 L.Ed.2d 20, 1960 A.M.C. 2251; Cox v. Esso Shipping Co., 5 Cir., 1957, 247 F.2d 629, at page 637, 1957 A.M.C. 1927; Vickers v. Tumey, 5 Cir., 1961, 290 F.2d 426.

■ The respondent knows all that it needs to know. What it knows is of no real help. But on this record there is no indication that if it could learn more, it could extricate itself from the inexorable consequences of the American Maritime concept of seaworthiness.[5] On the other question—that of how much—no harm is shown. As to that, there is an abundance of medical testimony and evidence available in the workmen's compensation proceeding file. Moreover, time has not diminished the ability to obtain evidence bearing upon earnings or the reduction of earning capacity, permanent or temporary, complete or partial.

■ There is no basis for concluding that this libel should be barred by the equitable doctrine of laches. For a trial and other and further consistent proceedings, the cause must be reversed.

Reversed and remanded.

5. Obviously, we do not here direct the entry of a decree on liability. The case has not been tried. It may be that on a final trial the facts will turn out to be something different. Cf. Claussen v. Mene Grande Oil Co., 3 Cir., 1960, 275 F.2d 108. We hold that libellant more than satisfied his burden of showing no prejudice because on this record as it now appears it is a case of absolute liability. We sound this caveat to make clear that what we hold is that the case is ripe for trial and it is on the evidence of that trial that the judge must make his decision. Cf. United States v. Bowen, 5 Cir., 1961, 290 F.2d 40; Fontainebleau Hotel Corp. v. Crossman, 5 Cir., 1961, 286 F.2d 926, at page 928.