John J. McCONVILLE, Appellant,

v.

FLORIDA TOWING CORPORATION, Appellee.

No. 20195.

United States Court of Appeals
Fifth Circuit.

July 18, 1963.

---

Arthur Roth, Miami, Fla., S. Eldridge
Sampliner, Cleveland, Ohio, for appellant.

**164**

Davisson F. Dunlap, Jacksonville, Fla. (Ulmer, Murchison, Kent, Ashby & Ball, Jacksonville, Fla., of counsel), for appellee.

Before ' JONES, BROWN and LEWIS,* Circuit Judges.

### JOHN R. BROWN, Circuit Judge.

What was hoped to be, but never quite got into the case below has probably turned out to be the only matter of much consequence in this appeal from a decree exonerating a tug owner of all claims for damages as well as maintenance and cure resulting from an assault committed by the cook of the Tug Hercules on the deckhand McConville. The only real surviving issue is whether the Court properly denied leave to amend the libel to set up in Counts Four and Five claims for statutory penalties for unlawful payments of wages of a seaman.

The main appeal may be quickly disposed of. While the Tug Hercules was in the Port of San Juan, P.R., on Christmas Eve (December 24, 1959), McConville was struck by May, the cook, who in the course of the fray armed himself with a piece of iron bearing the unlikely, but presumably nautical, descriptive "dog." The Libelant's theory was, of course, the now familiar concept of Boudoin v. Lykes Bros. Steamship Co., 1953, 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354, 1954 A.M.C. 2231, which could trace its genesis to Keen v. Overseas Tankship Corp., 2 Cir., 1952, 194 F.2d 515, 1952 A.M.C. 241, and its personification of the seaworthiness warranty to crew members who must be "equal in disposition and seamanship to the ordinary men in the calling." His burden, then, was to make out May to be "a seaman with a wicked disposition, a propensity to evil conduct, a savage and vicious nature." 348 U.S. 336, 340, 75 S.Ct. 382, 385, 99 L.Ed. 354. But after a trial and the fresh opportunity of seeing and hearing witnesses, including the Libelant, the trial Judge had quite a different view.

Most charitably to Libelant, the episode might be called a case of holiday spirit, or at least spirits. For the Judge found that McConville, following an afternoon of heavy drinking ashore, "returned to the vessel about 5:30 p. m. in a drunken and intoxicated condition, and without just cause instigated and provoked a quarrel and a fight with the cook, May." This was not their first brush as some nine months before McConville had attacked May, a much smaller man. May tried to avoid the Christmas Eve fight but to no avail. Not without some reason, he used the iron "dog" as an equalizer to bring the fight to an end. Just who said what, or the exact sequence of events concerning where May was sitting, or where McConville was standing is of little consequence. McConville's version was diametrically opposed to that of his shipmate Furman, the Engineer Hearndon as well as May. The Court chose to credit them rather than McConville for more than enough reasons to save the finding under the clearly erroneous test. Ohio Barge Line, Inc. v. Oil Transport Co., 5 Cir., 1960, 280 F.2d 448, 449, 1961 A.M.C. 375.

With this basic resolution of credibility, the Court went on to find that McConville "was the aggressor in the fight and assaulted the cook." The "sole and proximate cause" of the injuries sustained was McConville's "own gross and willful misconduct and vices, namely, his own drunkenness and * * * the fight with the cook, May, in which [he] was the instigator, provoker and aggressor." As to the other participant, May, the Court found that he tried to avoid the fight, had not been drinking and "was a seaman above average in disposition and seamanship" with no "showing that [he] had a wicked disposition with dangerous and vicious propensities * * * or had a savage and vicious nature." As the smaller of the two and a second-time victim, the Court gave May a clean bill of health as "a good worker, of calm disposition and nature * * * not

---

* Of the Tenth Circuit, sitting by designation.

quarrelsome nor prone to get into fights with his fellow shipmates."

On these fact findings the Court quite properly concluded that there was no negligence and no unseaworthiness. Denying the claim for damages or indemnity, the Judge also held the injuries were "incurred solely * * * as a result of [McConville's] own gross and willful misconduct and vices * * *" which "willful misbehavior bars him from any rights to maintenance and cure." The Court did, however, allow recovery of earned wages up to the time of the fight, $269.76, plus unearned wages to the termination of the voyage ($140) for an aggregate of $409.76.[1]

McConville's attack on these crucial fact findings is obscure. Though his story was quite different on the trial, his brief now acknowledges that he does "not dispute that [he] had been celebrating Christmas Eve ashore and had some drinks. He probably was drunk * * *."

■■ This was the classic case of sharply contradictory stories about a classic shipboard fracas. The Court's resolution of the conflict is not undermined by the witness Hearndon's having testified both as a Libelant's and as a Respondent's witness. If Hearndon could be called as an adverse witness, cf. Fall v. Esso Standard Oil Co., 5 Cir., 1961, 297 F.2d 411, 1962 A.M.C. 951, cert. denied, 371 U.S. 814, 83 S.Ct. 24, 9 L.Ed. 2d 55; June T., Inc. v. King, 5 Cir., 1961, 290 F.2d 404, 1961 A.M.C. 1431—a point we need not determine—no harm is shown since Hearndon testified freely. It is simply a distortion of the long accepted, but much criticized, principle of vouching for one's own witness for Libelant to now urge that the shipowner was "bound" as a matter of a judicial admission by Hearndon's version. While a party may not attack the credibility of its own witness (e. g., by impeach-

ment), it is free to offer contradictory evidence. Degelos v. Fidelity & Casualty Co., 5 Cir., 1963, 313 F.2d 809, 814; McCormick, Evidence § 38 (1954); 3 Wigmore, Evidence §§ 896–918 (1940). Even more important, neither as a matter of fact nor of law did the trial Court have to conclude that Hearndon swore his ship into a case of liability. His version, no less than May's, put the responsibility exactly where the Judge put it—right on McConville, not on May.

■ With these findings amply sustained, the Court was eminently justified in denying any allowance for maintenance and cure since McConville's injuries were caused by his own affirmative misconduct. Watson v. Joshua Hendy Corp., 2 Cir., 1957, 245 F.2d 463, 464, 1957 A.M.C. 2367; Kable v. United States, 2 Cir., 1948, 169 F.2d 90, 1948 A.M.C. 1595; 1949, 175 F.2d 16, 1949 A.M.C. 1378; Aguilar v. Standard Oil Co. of New Jersey, 1943, 318 U.S. 724, 730–31, 63 S.Ct. 930, 87 L.Ed. 1107, 1943 A.M.C. 451.

This brings us, then, to the more troublesome question of denial of leave to amend the libel to assert statutory penalties for nonpayment, or improper payment, of seaman's wages.

The original libel to recover damages and maintenance and cure, filed on November 21, 1960, was well within the three-year period for a Jones Act and unseaworthiness claim. McAllister v. Magnolia Petroleum Co., 1958, 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272, 1958 A.M.C. 1754. To the amended libel filed on June 13, 1961, to meet formal exceptions sustained by the Court, the Respondent answered on June 28, 1961. That answer prayed for a set-off. "Libelant owes the respondent the sum of * * * $588.84 * * * which amount was loaned by respondent to libelant and no repayment of principal or interest

---

1. On the eve of trial the shipowner withdrew the claim for set-off and stipulated that Libelant "if entitled" to "earned wages" or "any unearned wages" is entitled to the specified sums actually thereafter allowed.

has been made by libelant, for which sum respondent demands judgment."

Within a few days the Libelant took the pretrial deposition of Mrs. Moore, personnel director of Respondent, who produced books and records as to McConville's wages and the claimed set-off. Based on information developed in Mrs. Moore's deposition, Libelant on July 17, 1961, moved for leave to amend the libel. To this, exceptions pleading laches were sustained with leave to amend further.[2] A further amendment was proposed October 23, 1961, to which Respondent excepted again on the ground of laches. These exceptions were sustained and the amended libel dismissed with prejudice on April 4, 1962.

In this last amendment the Fourth Count was based on 46 U.S.C.A. §§ 597, 600 and 601 and covered wage payments from 1951 up through the date of his discharge, December 24, 1959. This Count complained of illegal advances made as well as improper deduction of the advances or parts thereof from wages later earned and due. As the excuse for late filing, Libelant asserted he was ignorant of his rights and had relied generally on his employer until the facts were finally revealed in the shipowner's pleaded set-off. Express reference was made to Mrs. Moore's detailed deposition.[3]

In the Fifth Count, the amendments expressly realleged all of the Fourth Count, including, of course, Paragraph

5 (note 3, supra). It sought statutory penalties of two-for-one under 46 U.S. C.A. § 601. It alleged with factual particularity that on the date of his injuries, December 24, 1959, Libelant had earned wages due him for 11 days, plus time off wages for 3⅔ days plus an additional two weeks of vacation pay. Nevertheless, the libel continued, Respondent, after demand for payment, had refused to pay Libelant his earned wages.

■■ While the exceptions were sustained on several grounds, none save laches would uphold at this stage the decisive dismissal with prejudice. Imperfect or lacking in factual particularity as they might have been, these allegations were yet enough to satisfy the liberal standards of admiralty pleadings. 2 Benedict, Admiralty § 237 (Knauth ed. 1940).

■ As asserted here, laches rested on the local Florida statute fixing a one-year statute of limitations for the commencement of "Suits for the recovery of wages, overtime, or damages and penalties accruing under laws respecting the payment of wages and overtime. * * *" Fla.Stat.Ann. § 95.11(7) (b). We have applied this as the initial, analogous test for laches for recovery of seaman's wages in McMahon v. Pan American World Airways, Inc., 5 Cir., 1962, 297 F.2d 268, 1962 A.M.C. 655.[4]

We have dealt so often and so recently with the problem of laches in admiralty cases that little good would come of any

---

2. The order of October 13, 1961, sustaining the exceptions for laches as well as failure to state a claim, denied the motion to amend the libel but "with leave to refile amendments * * * within twenty * * * (20) days * * * upon the condition that Libelant allege facts excusing his delay in filing the Fourth and Fifth Causes of Action * * * and negativing any prejudice to the Respondent resulting from such delay, and by pleading such additional material facts as are necessary to state causes of action under the Federal Statutes referred to in said Fourth and Fifth Causes of Action."

3. Paragraph 5 of the proposed amended libel stated, "5. That the Respondent's records on account of said illegal advances and deductions are now in evidence in this Court by reason of the deposition of the Respondent's Personnel Manager, Ethel E. Moore, who testified that the records therefore which are now in evidence, are complete in all details."

4. Our opinion in McMahon emphasizes that after granting Respondent's motion to dismiss the claim for overtime for laches "but without prejudice and with leave * * * to amend" the Libelant "made no amendment * * *" and filed no pleadings showing either excuse for delay or lack of prejudice.

effort to reconstruct these decisions.[5] It suffices to say that a comparison of the holdings merely emphasizes the decisive importance of the facts of each particular case, either as presented on pleadings or in the more preferred route through some preliminary factual inquiry. Seemingly contradictory results are not so at all.[6] Perhaps the best examples of that are the two Malula opinions. Lying side by side in the Report, argued the same date, involving the same vessel, injury to two longshoremen in Puerto Rico, the cases end in divergent results. And this present case provides fresh evidence of this principle since as to Count Four we affirm but reverse as to Count Five.

 As to Count Four, we agree with the District Court that Libelant failed to make a minimum showing. Of course this ruling does not foreclose Libelant's development of these facts insofar as they are pertinent to the claim asserted in Count Five. But as a claim for damages based upon 46 U.S.C.A. §§ 597, 600 and 601, assuming them to be applicable, there was no justification for a delay of as much as eight years. And, most certainly, Respondent was exposed to substantial prejudice. The records identified by Mrs. Moore revealed without a doubt that advances against wages not yet earned had been made over a period of years. These ran from time to time as high as approximately $1500. This appears to be a flagrant violation of § 599 and perhaps § 597. But these payroll records do not reflect where the vessel was, or what the voyages were, either at the time of the advance, the earning of the wages, or when eventually credited (without payment in cash) against earned wages. And yet these facts might be crucial under 46 U.S.C.A. § 544 which exempts tugboats engaged in harbor operations or the like. See Gardner v. The L. N. Danzler, E.D.Va., 1959, 177 F.Supp. 736, 1959 A.M.C. 2432, affirmed, 4 Cir., 1960, 281 F.2d 719, 1960 A.M.C. 1915; Cotter v. The Lucinda Clark, E.D.Mo., 1950, 94 F.Supp. 264, 1950 A.M.C. 1838.

 But we think Count Five stands quite differently. This calls for no search in antiquity, no evidentiary *minutiae* concerning the type of voyage, the ports, places or cargo carried. Rather, it has to do with an identifiable event —the very same event involved in the main case. The only difference is that the question now concerns the payment or nonpayment of earned wages at the time of McConville's discharge from the vessel on December 24, 1959, following the injuries received in the fracas with the cook. The payroll records fortified by Mrs. Moore's testimony demonstrate that the facts are well known if not uncontradicted.[7] Quite apart from the running balance totaling $588.84 for previous, (and perhaps illegal) advances[8] these

---

**5.** Morales v. Moore-McCormick Lines, Inc., 5 Cir., 1953, 208 F.2d 218, 1954 A.M.C. 87; McDaniel v. Gulf & South American Steamship Co., 5 Cir., 1955, 228 F.2d 189, 1956 A.M.C. 105; Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co., 5 Cir., 1958, 261 F.2d 861, 865, 1959 A.M.C. 148; Vega v. The Malula, 5 Cir., 1961, 291 F.2d 415, 1961 A.M.C. 1698; Delgado v. The Malula, 5 Cir., 1961, 291 F.2d 420, 1961 A.M.C. 1706; McMahon v. Pan American World Airways, Inc., 5 Cir., 1962, 297 F.2d 268, 1962 A.M.C. 655; Flowers v. Savannah Machine & Foundry Co., 5 Cir., 1962, 310 F.2d 135.

**6.** See a comparative analysis of several of our decisions listed in note 5, supra, in Pure Oil Co. v. Snipes, 5 Cir., 1961, 293 F.2d 60, 69–70, 1961 A.M.C. 1651. All of these subtle factors are elucidated in Czaplicki v. S.S. Hoegh Silvercloud, 1956, 351 U.S. 525, 533, 76 S.Ct. 946, 951, 100 L.Ed. 1387, 1956 A.M.C. 1465.

**7.** The deposition and the exhibits were incorporated by reference into the amended libel, see note 3, supra, so that the Court had considerably more than bare bones pleadings. This was more detail than we held to be sufficient in McDaniel v. Gulf & South American Steamship Co., 5 Cir., 1955, 228 F.2d 189, 1956 A.M.C. 105. Up to a point it greatly resembles the detail supplied in Vega v. The Malula, 5 Cir., 1961, 291 F.2d 415, 416, 1961 A.M.C. 1698. But here the Court stopped short and did not take what we there described as the "obviously wise course" of a judicial hearing to ascertain the merits of the plea of laches as to this count.

**8.** This set-off plea was withdrawn, see note 1, supra.

records show that as of the time of his discharge from the vessel, McConville had earned wages coming to him of $147.-07 and $68.59. The record also shows that neither of these sums was paid and that each was credited against prior advances.

The facts about advances, payments, credits are therefore positively known. Certainly at this stage and in the light of the attemped set-off of $588.84 urged by the shipowner but subsequently abandoned, Respondent can suffer no prejudice from intervening delay. Left open, of course, are the questions—perhaps both legal and factual—as to whether this particular voyage on which these wages had been earned brought it within 46 U.S.C.A. § 596 as a "vessel making coasting voyages," or within the penalty provisions of § 596, or whether it was exempt as a vessel "engaged in the coastwide trade" within the meaning of 46 U.S.C.A. § 544.[9]

 Likewise, there will be the legal-factual question whether this nonpayment of wages reflected by the record constitutes, in the words of the Statute the case of a "master or owner who refuses or neglects to make payment [on discharge] * * * without sufficient cause." This is required to entitle Libelant "to two days' pay for each and every day during which payment is delayed * * *," 46 U.S.C.A. § 596.[10] But these facts are either well known or within the knowledge and control of Respondent. Of course to reject the plea of laches does subject the shipowner to a claim of serious proportions which it would not otherwise have to face. But that is not the test. "Laches is much more than time. It is time plus prejudicial harm, and the harm is not merely that one loses what he otherwise would have kept, but that delay has subjected him to a disadvantage in asserting and establishing his claimed right or defense." Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co., 5 Cir., 1958, 261 F.2d 861, 865, 1959 A.M.C. 148.

Consequently as to Count Five the decree must be reversed and the cause remanded for further and not inconsistent proceedings.[11]

Affirmed in part.

Reversed and Remanded in part.

9. See Gardner v. The L. N. Danzler, E.D. Va., 1959, 177 F.Supp. 736, affirmed, 4 Cir., 1960, 281 F.2d 719, 1960 A.M.C. 1915; Mahar v. Gartland S.S. Co., 2 Cir., 1946, 154 F.2d 621, 1946 A.M.C. 551; Carson v. Gulf Oil Corp., Fla.App., 1960, 123 So.2d 35; cf. Blackton v. Gordon, 1938, 303 U.S. 91, 58 S.Ct. 417, 82 L.Ed. 683.

10. Except for holding that the facts revealed are sufficient as to require a hearing to determine the intrinsic merits, we refrain from intimating whether the failure to pay all or any part of earned wages was "without sufficient cause" under applicable standards. See, e. g., Isbrandtsen Co. v. Johnson, 1952, 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294; McRea v. United States, 1935, 294 U.S. 23, 55 S.Ct. 291, 79 L.Ed. 735; Collie v. Fergusson, 1930, 281 U.S. 52, 50 S.Ct. 189, 74 L.Ed. 696; Kalantzis v. Mesar, 4 Cir., 1957, 245 F.2d 705, 1958 A.M.C. 117; The Fletero v. Arias, 4 Cir., 1953, 206 F.2d 267, 1953 A.M.C. 1390, cert. denied, 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398; Caribean Federation Lines v. Karhl Dahl, 5 Cir., 1963, 315 F.2d 370; Conte v. Flota Mercante Del Estado, 2 Cir., 1960, 277 F.2d 664, 1960 A.M.C. 1075.

11. Overruling the plea of laches in this fashion, we do not foreclose the District Court's inquiry and proper evaluation of *time* as it bears on the merits of the claim, the extent and nature of the remedy to be afforded, if any, or the like. The Court has wide equitable discretion in fixing the time for which the penalty provision runs. See especially Caribbean Federation Lines v. Karhl Dahl, 5 Cir., 1963, 315 F.2d 370; also Prindes v. The S.S. African Pilgrim, 4 Cir., 1959, 266 F.2d 125, 1959 A.M.C. 477.