In the Matter of the Libel and Petition of BROWN & ROOT MARINE OPERATORS, INC., Owner of the BARGE MM–71, in a Cause of Exoneration from or Limitation of Liability.

A. D. No. 1782.

United States District Court
S. D. Texas,
Houston Division.

Oct. 6, 1965.

Eikel & Goller, Houston, Tex., Robert Eikel and Theodore Goller, Houston, Tex., for petitioner.

Baker, Botts, Shepherd & Coates, Houston, Tex., James K. Nance and R. Gordon Gooch, Houston, Tex., for claimant, Zapata Off-Shore Co.

## MEMORANDUM OPINION:

HANNAY, District Judge.

Under a contract for hire entered into before July 1959, Brown & Root Marine Operators, Inc., a Texas corporation, hereinafter called Petitioner, agreed with Claimant, Zapata Off-Shore Company, a Delaware corporation, for Petitioner to perform labor and furnish the material for the fabrication, construction and erection of certain platforms and walkways and to lay certain pipelines in and about Wells #1 and #3 located in Block 86, Vermillion area in the Gulf of Mexico off the coast of Louisiana. In pursuance of said contract, Petitioner employed in the work several of its own vessels, including the Barge MM-71, the Derrick Barge H. A. LINDSAY, and the Tug PAN-AMERICA.

The Barge MM-71 was employed to carry the material to be used in the work contracted to be done and was to be the vessel from which the work of welding was to be carried on. The Derrick Barge H. A. LINDSAY was used as the headquarters vessel and to lodge the personnel of Claimant engaged in such work, and the Tug PAN-AMERICA was the attending tug which moved the said barges (which were non-propulsion and non-manned vessels) from place to place as needed, and also to move the personnel and material employed in the project.

On the 25th day of July, 1959, the Barge MM-71 collided with Well #1, resulting in substantial damage. Claimant alleges that the collision was caused and contributed to by the fault and negligence of the Derrick Barge H. A. LINDSAY, the Tug PAN-AMERICA, and the Barge MM-71, and those in charge of said vessels, and claims that Petitioner is liable for the resulting damage because it failed to comply with its contractual obligation in that it negligently failed to perform its duties in a proper, efficient and workmanlike manner, and also that the collision in question was the result of unseaworthiness on the part of the vessels above mentioned owned by Petitioner.

Petitioner, on January 14, 1960, filed a libel and petition as the owner of the Barge MM-71 for exoneration from or limitation of liability, civil and maritime, and alleges that the MM-71 was a steel hulled pipe-laying barge, equipped with a diesel generator and four gasoline-driven winches, was approximately 186 feet in length and 34 feet in breadth, and with a draft of 11 feet, built in 1943 or thereabouts, as a United States Navy LSM and converted by extensive refitting to a pipe-laying barge.

Petitioner further claims the benefits of the limitation of liability provided in Sections 4282, 4283, 4284, 4285, and 4286 of the Revised Statutes of the United States (46 U.S.C.A. Sections 183–189) and offers an *ad interim* stipulation of the value of $65,000.00 of said Barge MM-71, and says that said sum is in ex-

cess of the value of the interest of Petitioner in the said vessel, her equipment and pending freights.

Claimant filed its answer and says that Petitioner is not entitled to exoneration from or limitation of liability for the losses and damages resulting from the collision in question and denies that Petitioner is entitled to the benefits of the limitation of liability and denies that the value of the Barge MM-71 is $65,000.00, but says that it had a substantially higher value.

In addition, Claimant also says that Petitioner is not entitled to proceed under the limitation of liability statutes, 46 U.S.C.A. §§ 183–189, and that Petitioner's petition should be dismissed for the reason that Petitioner has failed to surrender its interest in the Derrick Barge H. A. LINDSAY and the Tug PAN-AMERICA, as well as the Barge MM-71. It also says that in the latter two vessels Petitioner failed to file *ad interim* stipulations covering their values with this Court.

The questions for decision are two:

1. Is Petitioner liable for the collision in question?

2. If it is, what vessel or vessels should be included in the limitation of liability?

The case was tried to the Court and the question of amount of damage was, by agreement of parties, not submitted or made an issue.

On the first question, Claimant contends that Petitioner is liable because when a moving vessel collides with a stationary object a presumption of fault arises against the moving vessel and the fact of the occurrence is sufficient in itself to make out a prima facie case against the moving vessel. In this connection it is undisputed that Petitioner began moving Barge MM-71 in the vicinity of Well #1 and that it arrived on July 22, 1959, for the purpose of doing the work above outlined. At that time the Derrick Barge H. A. LINDSAY and the Tug PAN-AMERICA also arrived in the vicinity of said Wells #1 and #3 for the purpose of assisting in the installation of the aforesaid platforms and to direct and assist the Barge MM-71 in laying the pipeline.

On that same day the Derrick Barge H. A. LINDSAY engaged in some construction work at Well #3, using its stern winch cable to pull the flow line from Well #1 across the ocean floor toward the platform at Well #3 as the Barge MM-71 laid said line from Well #1. Late on that same afternoon both the H. A. LINDSAY and the Barge MM-71 ceased their activities because of the weather conditions that had developed. To say the least, this information clearly reported the weather to be threatening and worsening.

On July 23 those in charge of the Derrick Barge H. A. LINDSAY, the Tug PAN-AMERICA and the Barge MM-71 ordered the PAN-AMERICA to shift the Barge MM-71 from its anchored position which was then some 200 feet from Well #1 to a position about 600 feet from Well #1. Petitioner had the means and the time and should have moved the Barge MM-71 much further away than 600 feet. Failure to do so was negligence, and such negligence was a proximate cause of the collision. The Barge H. A. LINDSAY, a much larger vessel than MM-71, was moved at least a mile from Well #1. On July 23, 24 and 25, the last three vessels above named were standing by, waiting for weather conditions to clear, so they could resume the construction work. All during this time weather reports were being received by those in charge of the Petitioner's operations and from the various radio stations in Texas and Louisiana, including those of A. H. Glenn and Associates. These weather reports were extensive and covered the area where the vessels were located for the period of from July 21 to July 26, 1959, respectively. This was during the time of the so-called hurricane season in this area These reports were amply sufficient to

alert Petitioner's employees of the danger that they were subject to in taking a "calculated risk" in permitting the Barge MM-71 to be left in such close proximity to Claimant's Well #1. Apparently, the employees of Petitioner chose to take this chance on the theory that the winds and waves in the case of a hurricane would come from a different direction from which they did, and would not be of great intensity. On the date of the collision, the intensity of the winds rose to about 40 to 60 miles per hour. This intensity was not unusual or extraordinary or unprecedented. See opinion by Judge Hutcheson speaking for the Fifth Circuit in the case of Sabine Towing Co. v. Brennan, 5 Cir., 72 F.2d 490. The waves reached a height of from 15 to 17 feet and constituted what is known as Hurricane Debra. Ordinarily, a hurricane is one whose winds exceed 74 miles per hour. Sabine Towing Co. case, supra, at page 496.

As early as March 7, 1928, in The T. J. Hooper, D.C., 53 F.2d 107, the Court held that radio broadcasting was widespread and that the weather reports broadcast by reason of such reports forecasting weather conditions was important information which navigators could not afford to ignore. In affirming the case, Judge Learned Hand, speaking for the Second Circuit, 60 F.2d 737, at page 740, wrote:

"We hold the tugs therefore because had they been properly equipped, they would have got the Arlington reports. The injury was a direct consequence of this unseaworthiness."

It is Petitioner's contention that this collision was the result of an inevitable accident. In that connection Judge Wisdom, writing for the Fifth Circuit in the case of Atkins v. Lorentzen, 328 F.2d 66, at page 69, defines such accident as follows:

"An accident is 'inevitable' or 'unavoidable' not only by an act of God 'but also when all precautions reasonable to be required have been taken, and the accident has occurred notwithstanding. To say that there is no liability in such a case seems only another way of saying that liability must be based on fault.' Gilmore and Black, Law of Admiralty, 396 (1957). In either case the term stands for the fact that one party has been unable to carry the burden of proving the culpability of the other party. See Griffin on Collisions, Chap. XXI, p. 537 (1949); The Australia, 6 Cir. 1903, 120 F. 220."

On the question of the burden of proving unavoidable accident, in the case of Swenson v. The Argonaut, 204 F.2d 636, at page 640, Judge Kalodner, writing for the Third Circuit, said:

"It is well-settled that the burden of proving inevitable accident is 'heavily' upon the party asserting that defense; that a finding of inevitable accident is 'not to be lightly arrived at'; that the respondent must affirmatively establish that the accident ' * * * could not have been prevented by the use of that degree of reasonable care and attention which the situation demanded', and that there was no intervening act of negligence on its part; when a collision is caused by a vessel drifting from her moorings there is a presumption of fault on her part and 'she must be liable * * * unless she can show affirmatively that the drifting was the result of inevitable accident, * * * which human skill and precaution and a proper display of nautical skill could not have prevented.'" (Citing many cases)

Claimant wholly failed to carry its heavy burden.

In two comparatively late cases decided by the Fifth Circuit, Boudoin v. J. Ray McDermott & Co., 281 F.2d 81 (1960), and Walker v. Harris, 335 F.2d 185 (1964), the Fifth Circuit Court of Appeals, speaking through Judge Brown, has held that the owner of a vessel should have reasonably anticipated

weather conditions and that failure to do so rendered the vessel unseaworthy, and those in charge were negligent in failing to properly maneuver the vessel after they received due warning knowledge of the approach of a hurricane.

In the case of Walker v. Harris, supra, Judge Brown, after discussing the failure of those in charge of a vessel to heed the timely warning given of the approach of bad weather, defined "seaworthiness" as follows:

"Seaworthiness, as that term has been defined and redefined, is reasonable fitness to perform or do the work at hand. Saunders v. Pool Shipping Co., 5 Cir., 1956, 235 F.2d 729, 1956 AMC 1351; Ionion Steamship Co. of Athens v. United Distillers of America, Inc., 5 Cir., 1956, 236 F.2d 78, 1956 AMC 1750; Tropical Marine Products, Inc. v. Birmingham Fire Ins. Co., 5 Cir., 1957, 247 F.2d 116, 1957 AMC 1946; Vega v. The Malula, 5 Cir., 1961, 291 F.2d 415, 1961 AMC 1698; Delta Eng'r Corp. v. Scott, 5 Cir., 1963, 322 F.2d 11; Texas Manhaden Co. v. Johnson, 5 Cir., 1964, 332 F.2d 527, 528, nn. 1, 2 [No. 20713, May 13, 1964]."

Applying the principles above set out, I conclude and hold that Petitioner was on the occasion in question guilty of negligence and that such negligence was the direct and proximate cause of the collision in question, and that, therefore, the accident was not inevitable and the collision was not caused by an act of God.

I further find that the three vessels, to-wit, the Barge MM-71, the Derrick Barge H. A. LINDSAY, and the Tug PAN-AMERICA, were unseaworthy at the time of the collision.

Considering now the second question as to which of the vessels, in addition to the Barge MM-71, should be liable as comprising a flotilla, I am of the opinion and so hold that the Derrick Barge H. A. LINDSAY and the Tug PAN-AMERICA should be included in and as part of the flotilla and should be surrendered because all three of the vessels were owned by the same person, that is, the Petitioner herein, and all were engaged at the time of the collision in a common venture or enterprise and were all performing the contract between Claimant and Petitioner, and each of said vessels was playing a necessary and important part in the work, and all of said vessels were under a single command, and all of said vessels contributed in some degree to the collision in question. See The Columbia, 9 Cir., 73 F. 226; Sacramento Nav. Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663 (1927); Standard Dredging Co. v. Kristiansen, 2 Cir., 67 F.2d 548; United States Dredging Corp. v. Krohmer, 2 Cir., 264 F.2d 339, cert. den., 360 U.S. 932, 79 S.Ct. 1452, 3 L.Ed.2d 1545.

Accordingly, I find that the above mentioned three vessels, to-wit, the Barge MM-71, the Derrick Barge H. A. LINDSAY, and the Tug PAN-AMERICA, and those in charge of the above named vessels, were guilty of actionable negligence causing said collision, and that at the time each of said vessels was unseaworthy. I find Petitioner liable to Claimant for its damages, and I order the Petitioner to surrender each of said vessels or file a stipulation for their value, excepting the Barge MM-71 to which the Petitioner has heretofore filed a stipulation for value.

I further find that this Court has jurisdiction of the subject matter and parties to this suit.

This memorandum shall constitute the findings of fact and conclusions of law herein.

Costs of Court are adjudged against the Petitioner.

The Clerk will notify counsel.