**William T. GARDNER, Appellant,**

v.

**THE Tugboat L. N. DANZLER, her engines, tackle, etc., in rem, and Norfolk Dredging Company, in personam, Appellees.**

**No. 8088.**

United States Court of Appeals
Fourth Circuit.

Argued June 7, 1960.

Decided Aug. 26, 1960.

---

William A. Redfern, Norfolk, Va. (Devany & Redfern, Norfolk, Va., on the brief), for appellant.

Roy L. Sykes (Waverley L. Berkley, III, and Jett, Sykes & Coupland, Norfolk, Va., on the brief), for appellees.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

In accordance with the standard practice in the dredging industry in Norfolk and on the Eastern seaboard, a dredging company deducted from the wages paid one of its seamen, employed in various capacities aboard its dredges and other vessels, the sum of $1 for each day when rations were furnished by it. The seaman challenges the legality of the deduction. He seeks to recover the total of such deductions during a period of more than four years, together with statutory penalties for delay in payment of seaman's wages.

■ The District Judge filed an opinion[1] in which he held that the deduction was not prohibited by the statutes. Subsequently, he filed formal Findings of Fact and Conclusions of Law, in which he found that Gardner, the seaman, had assented to the deduction[2] and concluded he had no right to recover the amount of the deductions. We agree with his conclusion.

Norfolk Dredging Company does dredging work in inland waters as far north as the District of Columbia and as far south as Charleston, South Carolina. When it obtains a contract for dredging work, it sends to the job site a dredge in tow of a tug and such other barges, scows and launches as may be required. Some extensive operations require that a dredge and her supporting vessels remain at the same job site for extended periods. When the work is done, however, the vessels are moved to some other job site or returned to the company's yard in Norfolk.

Gardner, the complaining seaman, worked for extended periods as launchman or launchman-tankerman on the dredges, Florida and Atlantic. For relatively short periods, he worked as deckhand on the tug, Virginia, as mate on the tug, Egbert H., as captain, or yard captain, of the tug, Danzler, and as a mechanic in Norfolk Dredging Company's yard.

When living and working aboard a dredge or tug away from the company's yard, Gardner and other members of the crew were furnished meals for

1. 177 F.Supp. 736.

2. This finding is supported by testimony that Gardner, knowing of the deduction, continued in the employment for more than four years, with a few interruptions for relatively short periods, without any objection to it. The fact that, on several occasions, he declined to sign a written assent to it, when requested to do so by a dredge "clerk," did not require a contrary finding.

which a charge of $1 per day was made and deducted from wages. A total of $1,133 was thus deducted from 'Gardner's wages during a period of more than four years. When he was working in the company's yard or aboard a vessel moored there, no meals were furnished but, apparently, were procured by him at his expense.

The seaman rests his case upon the statutes pertaining to merchant seamen, relying particularly on those sections now codified as 46 U.S.C.A. §§ 713, 665 and 596.

Section 713 contains a "Scale of Provisions to Be Allowed and Served out to the Crew During the Voyage" and provides for certain permissible substitutes. Section 665,[3] with some exceptions, gives a seaman a right to an additional wage allowance if the rations served him are deficient in quantity or quality. Section 596[4] requires that wages of seamen on coasting voyages be paid within two days after termination of the agreement under which he was shipped or when he is discharged, whichever first happens. Section 596 also imposes a penalty of two days' pay for every day's delay in the payment of wages due.

His theory, therefore, is that he was entitled to rations when serving on board the dredges and tugs, that the deduction for board was unlawful, and that he is entitled to recover the deducted sums as wages together with the penalties imposed by § 596.

The boat and the dredging company rely on 46 U.S.C.A. § 544. That section excepts sail or steam vessels engaged in the coastwise trade, not in-

---

3. "§ 665. Allowance for reduction of provisions

"If, during a voyage, the allowance of any of the provisions which any seaman is entitled to under section 713 of this title is reduced except for any time during which such seaman willfully and without sufficient cause refuses or neglects to perform his duty, or is lawfully under confinement for misconduct either on board or on shore; or if it shall be shown that any of such provisions are, or have been during the voyage, bad in quality or unfit for use, the seaman shall receive, by way of compensation for such reduction or bad quality, according to the time of its continuance, the following sums, to be paid to him in addition to and to be recoverable as wages:

"First. If his allowance is reduced by any quantity not exceeding one-third of the quantity specified by law, a sum not exceeding 50 cents a day.

"Second. If his allowance is reduced by more than one-third of such quantity, a sum not exceeding $1 a day.

"Third. In respect of bad quality, a sum not exceeding $1 a day.

"But if it is shown to the satisfaction of the court before which the case is tried that any provisions, the allowance of which has been reduced, could not be procured or supplied in sufficient quantities, or were unavoidably injured or lost, or if by reason of its innate qualities any article becomes unfit for use and that proper and equivalent substitutes were supplied in lieu thereof, the court shall take such circumstances into consideration and shall modify or refuse compensation, as the justice of the case may require. This section shall not apply to fishing or whaling vessels or yachts."

4. "§ 596. Time for payment

"The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage. This section shall not apply to fishing or whaling vessels or yachts."

cluding intercoastal trade between Atlantic and Pacific ports, from the provisions of §§ 713, 665 and 596, upon which the seaman relies, as well as from other sections of Title 46.

The seaman does not contend that the diesel powered tugs and the dredges, which have no motive power of their own, are not "sail or steam vessels" within the meaning of § 544, if that section is in force. Rather, he contends that the Act of June 9, 1874,[5] from which § 544 is derived, was repealed by implication when the Shipping Commissioners' Act of 1872 was extensively amended by the Act of Dec. 21, 1898.[6]

The Shipping Commissioners' Act of 1872[7] contained comprehensive provisions for the protection of seamen. Among other things, it made provision for Shipping Commissioners and required that the crews of ships sailing foreign or between Atlantic and Pacific ports be signed on and discharged before Commissioners. For such seamen, written articles, having the form and content fixed by the statute, were required for each voyage. Appended to § 68 of that Act is a scale of provisions, which was required to be stated in the written articles and which is the antecedent of the table in current code § 713. A right of action was created for short rations of proper quality by § 39 of the Act, from which current § 665 is derived. The wages of seamen required to ship under written articles were required by § 35 to be paid within specified times and the penalty of two days' pay for each day's delay was imposed, which section, in amended form, survives as § 596.

The requirement of § 12 of the Act of 1872, 46 U.S.C.A. §§ 564, 574, of written articles was limited to the crews of ships sailing foreign or on inter-coastal voyages. By the Act of June 9, 1874,[8] from which § 544 is derived, the Congress declared that none of the provisions of the Shipping Commissioners' Act of 1872 was to apply to "sail or steam vessels engaged in the coastwise trade," except on intercoastal voyages. Referring to the Act of 1874, the Supreme Court declared it to be "an explicit declaration that Congress never intended that the original act should apply to vessels engaged in any part of the coasting trade * * *."[9]

In Inter-Island Steam Navigation Company, Limited v. Byrne, 239 U.S. 459, 462, 36 S.Ct. 132, 134, 60 L.Ed. 382, the purpose of the exemption of vessels in the coasting trade was stated to have been "the relief of vessels making relatively short voyages, with frequent opportunities for reaching ports, from burdensome requirements not then deemed essential to the welfare of seamen employed thereon." It must have been recognized, too, that it would be quite impractical to apply to most of the small craft and vessels on inland waters the basic scheme of the Shipping Commissioners' Act—that Commissioners supervise the signing on of each crewman for each voyage and his discharge upon termination of the voyage. If the employment of seamen on small craft on inland waters was to be regulated, it was hardly to be approached through a requirement that the crews be reshipped before Commissioners prior to each "voyage."

Such considerations do not apply to all vessels making coastal voyages. In 1886, therefore, Congress made the services of Shipping Commissioners available to coastal vessels when requested by the owner. The Act of June 19, 1886,[10] § 2 provides that "shipping commissioners may ship and discharge crews

5. 18 Stat. 64.
6. 30 Stat. 755.
7. 17 Stat. 262.
8. 18 Stat. 64.
9. United States v. The Grace Lothrop, 95 U.S. 527, 532, 24 L.Ed. 514; see, also, United States v. Smith, 95 U.S. 536, 24 L. Ed. 517; Inter-Island Steam Navigation Company, Limited v. Byrne, 239 U.S. 459, 36 S.Ct. 132, 60 L.Ed. 382.
10. 24 Stat. 79, 46 U.S.C.A. §§ 563, 646.

for any vessel engaged in the coastwise trade * * * at the request of the master or owner * * *," at one-half the regular fees.

The Act of 1886 is silent about the nature and content of the articles to be signed by seamen shipped by Commissioners for coastal voyages under the permissive provision of that act. Nor did the Act of 1886 subject a vessel undertaking a coastal voyage to any of the provisions of the Shipping Commissioners' Act of 1872 even though it availed itself of the privilege of utilizing the services of Commissioners. By the Act of August 19, 1890,[11] however, Congress provided that such seamen should be shipped under articles meeting the requirements for foreign articles. By reference to specific sections of the Revised Statutes, some of the provisions of the Shipping Commissioners' Act were extended to coastal vessels which elected to ship and discharge their crews before Commissioners. Presumably, this act required that the coastal articles contain a scale of provisions, for such a scale was required in foreign articles, but the sections of the Revised Statutes prescribing a particular scale of provisions, giving seamen rights to additional wages for short provisions and to penalties for delay in payment of wages were not among those extended to coastal vessels shipping crews before Commissioners.

The Act of 1890 was amended by the Act of February 18, 1895,[12] which provided that when seamen were shipped by Commissioners for coastal voyages the articles need not contain some things required of foreign articles, among them, a scale of provisions. The Act of 1895 by reference to specific sections of the Revised Statutes extended additional requirements to coastal vessels which shipped their crews before Commissioners, but the section fixing a particular scale of provisions and the section giving a seaman a right to additional wages for short rations were not among them.

The first sentence of Rev.Stat. § 4529 was extended to such vessels. That section was based upon § 35 of the Act of 1872, and the first sentence required that wages of seamen on voyages between Atlantic and Pacific ports be paid within two days of the termination of the agreement or upon discharge of the seamen. The penalty provisions for delay in payment were not in the first sentence and were not extended to seamen on coastal voyages.

The Act of 1895 expressly provided that in all respects, except those provided for, the agreement should be regarded as one privately made and as if the seaman had been shipped without going before Commissioners.

It is plain then that, as Congress approached passage of the Act of December 21, 1898, seamen on coastal vessels had no rights under the Shipping Commissioners' Act, as amended, unless, at the election of the vessel, they were shipped before Commissioners. In that event, they had some of the rights of foreign bound seamen, but not all. Among the rights coastal seamen shipped before Commissioners did not have were the rights to a scale of provisions and to additional pay for short rations.

The Act of December 21, 1898[13] is an agglomeration of twenty-four specific amendments of the laws relating to seamen. Among other things, the scale of provisions following § 4612 of the Revised Statutes, derived from § 68 of the Act of 1872, was amended to provide enlarged allowances. There were minor linguistic changes in § 4568 of the Revised Statutes, derived from § 39 of the Act of 1872, giving to those seamen who were entitled to provision allowances a right to additional wages for short rations. In accordance with the Act of 1895, discussed above, § 4529 of the Revised Statutes was amended to refer to coasting voyages. In adopting this amendment to § 4529, however, there was no limitation of the penalty

11. 26 Stat. 320, 46 U.S.C.A. § 563.

12. 28 Stat. 667.

13. 30 Stat. 755.

provision, so that, thereafter, seamen on coastal voyages, if shipped before Commissioners, had an apparent right to statutory penalties for delay in the payment of their wages.

Except that, as amended, § 4529 of the Revised Statutes does not itself contain the limitation that it applies to seamen on intracoastal voyages only if shipped before Commissioners, there is nothing in these specific amendments of specific sections of earlier laws which suggests that Congress intended any change in the basic scheme of the application of the laws. The statutes generally exempting coastal vessels and those giving seamen on coastal vessels which chose to ship their crews before Commissioners some of the rights of foreign bound seamen were not amended. The right of action for short rations is specifically limited to those seamen entitled to a scale of provisions under § 4612 of the Revised Statutes, and the scale of provisions attached to that section had not applied to coastal seamen, not even to those shipped before Commissioners. Nor was there any amendment of § 4511 of the Revised Statutes which requires articles containing a scale of provisions only for the crews of vessels on foreign or intercoastal voyages.

The seaman, however, points to § 26 of the Act of 1898 which provides that the act shall apply to "all vessels not herein specifically exempted," but that enumerated sections shall not apply to fishing or whaling vessels or yachts. There are some specific exemptions in the Act. There is, for instance, an exception to the requirement that wages be paid within a specified time of vessels whose crews participate in the profits of the voyage, an exception which was not introduced by the Act of 1898 but was preserved in the revision of § 4529 of the Revised Statutes. He reasons that, if the Act of 1898 applies to all vessels, by necessary implication it must have repealed those laws which partially exempted coastal vessels which elected to ship their crews before Commissioners and completely exempted those which did not.

A repeal by implication should not be found when the acts reasonably may be read together. As Chief Justice Hughes said in United States v. Borden Co.[14]:

"It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both if possible. United States v. Tynen, 11 Wall. 88, 92 [20 L.Ed. 153]; Henderson's Tobacco, 11 Wall. 652, 657 [20 L.Ed. 235]; General Motors Acceptance Corp. v. United States, 286 U. S. 49, 61, 62 [52 S.Ct. 468, 472, 76 L.Ed. 971, 82 A.L.R. 600]. The intention of the legislature to repeal 'must be clear and manifest'. Red Rock v. Henry, 106 U.S. 596, 601, 602 [1 S.Ct. 434, 439, 27 L.Ed. 251]. It is not sufficient, as was said by Mr. Justice Story in Wood v. United States, 16 Pet. 342, 362, 363 [10 L. Ed. 987], 'to establish that subsequent laws cover some or even all of the cases provided for by [the prior act]; for they may be merely affirmative, or cumulative, or auxiliary.' There must be 'a positive repugnancy between the provisions of the new law, and those of the old; and even then the old law is repealed by implication only *pro tanto* to the extent of the repugnancy'. See, also, Posados v. National City Bank, 296 U. S. 497, 504 [56 S.Ct. 349, 352, 80 L.Ed. 351]."

There is no such repugnancy here. In the light of the other statutes, § 26 of the Act of 1898 may reasonably be read as applying the provisions of the Act to all vessels when on foreign or intercoastal voyages, but only partially or not all to the same, and other, vessels when on coastal voyages.

The internal evidence within the Act of 1898 supports this view. In addition

14. 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181.

to the fact that Congress was dealing with specific amendments to specific sections of prior law, none of which dealt with provision allowances or charges on coastal vessels, some sections of the Revised Statutes were repealed by § 25 of the Act, the repealed sections being carefully enumerated. The repealed sections dealt with such things as wage allotments and advances, deserters, arrests, the secretion of seamen and extortion. None of the repealed sections had anything to do with the application of any part of these laws to coastal vessels.

Had Congress intended to extend to coasting vessels the requirements imposed upon vessels in foreign trade, extensive revision of the statutes would have been necessary. In addition to the repeal of the Acts of 1874 and of the Act of 1886, as amended in 1890 and 1895, the affirmative requirement of written articles, itself limited to foreign and intercoastal voyages, and other sections would require affirmative amendment. We cannot hold that all of this was done by implication when there is nothing to show any change in the considerations which led to the difference in the treatment of foreign and coastal voyages.

Moreover, in 1904 Congress adopted an amendment to the Act of 1895 selectively extending some of the laws to coasting vessels utilizing Commissioners to ship their crews. The Act of 1895 contained a prohibition against attachment of the clothing of seamen shipped by Commissioners on coastal vessels and imposed a penalty for withholding a seaman's clothing. This penalty, in a section having limited application to coastal vessels only, was enlarged by the Act of April 11, 1904.[15]

Though this point was not urged upon it, the Supreme Court in 1915 treated the Act of 1874 as valid and subsisting. It held that because of the Act of 1874,

the prohibition in the Act of 1872 against attachment of a seaman's wages did not apply to seamen on coastal vessels.[16] In apparent anticipation of this decision, Congress, by the Act of March 4, 1915,[17] re-enacted § 4536 of the Revised Statutes to bring seamen on coastal vessels within the protection of the anti-attachment provision.

Since then, the basic scheme of the statutes has been carried forward into the Code. Section 544 of Title 46 contains the general exemption of vessels in the coastwise trade. Section 563 provides that the Coast Guard, to which the duties of the Commissioners had been transferred, may ship crews for coastal vessels when requested by the vessel. When crews are so shipped, written articles are required but need not contain a scale of provisions. Certain sections of the Code are made applicable to coastal vessels which request the Coast Guard to ship their crews, but the shipment is otherwise treated as a private agreement privately made. The sections requiring a scale of provisions, creating a right to additional wages for short rations and imposing penalties for delay in payment of wages, are not among those extended for the protection of seamen shipped by the Coast Guard for coastal vessels. Section 646 of Title 46 permits the Coast Guard to discharge crews from coastal vessels when requested to do so by the master or owner.

In the light of all of this history and of the internal evidence of congressional intention, we think the conclusion of the District Court that there had been no repeal by implication of the Act of June 9, 1874 was clearly correct. As in 1874, the regulatory approach through supervised shipping of a crew for each foreign voyage is not adaptable to small craft on inland waters making short and repeated trips or to dredges which may work in one area for months or years. Con-

---

15. 33 Stat. 168, 46 U.S.C.A. § 563.

16. Inter-Island Steam Navigation Company, Limited v. Byrne, 239 U.S. 459, 36 S.Ct. 132, 60 L.Ed. 382.

17. C. 153, § 12, 38 Stat. 1164, 1169, 46 U.S.C.A. § 601.

gress has consistently distinguished between vessels employed in the foreign trade and those employed in the coasting trade. Neither the problems nor the remedies are the same in the two classes of employment. The distinctions so clearly drawn by the Congress were not obliterated by the Act of 1898, for § 26 of that act is properly read as applying the provisions of the act to all vessels when making voyages regulated by the substantive provisions of the act, but not when employed for unregulated purposes.

Affirmed.