**Kerney PEART and Stuart Sneed, Plaintiffs,**

v.

**The MOTOR VESSEL BERING EXPLORER et al., Defendants.**

**Martin R. NEWMAN, Plaintiff,**

v.

**The MOTOR VESSEL BERING EXPLORER et al., Defendants.**

**Nos. A–189–73, A74–11.**

United States District Court, D. Alaska.

April 12, 1974.

John H. Bradbury, Anchorage, Alaska, for plaintiffs.

D. A. Burr, Anchorage, Alaska, for defendants.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

This cause comes before the court upon defendants' motion for partial summary judgment and motion to require plaintiffs to post security for costs.

Plaintiffs are three persons who were on board the motor vessel Bering Explorer during a 1973 seismic survey of the Beaufort Sea. As an incentive to conduct the survey, plaintiffs were offered additional compensation in the form of a bonus calculated on the number of completed miles of seismic survey. The parties dispute the rate of additional compensation. Plaintiffs contend that the bonus was to be calculated at a rate of $50 per mile for the first 500 miles of survey, $150 per mile for the second 500 miles of survey, and $300 per mile for any excess over 1000 miles of survey. Defendants, on the other hand, contend that the rate of compensation claimed by plaintiffs is based on a cleri-

cal error which was subsequently corrected to be $5 per mile for the first 500 miles, $15 per mile for the second 500 miles, and $30 per mile for any excess over 1000 miles of survey.

Plaintiffs commenced this action for wages pursuant to 28 U.S.C. § 1333 and § 1916. Plaintiffs also allege that the double wage penalty provision of 46 U.S.C.A. § 596 is applicable to this matter, with the result that whatever additional compensation might be owed to plaintiffs includes a sum equal to two days' pay for each day during which payment is delayed.

Defendants have moved for partial summary judgment on the issue of whether the double wage penalty provision of § 596 is applicable to this cause. In pertinent part, that statute provides:

> The master or owner of any vessel making *coasting voyages* shall pay to every *seaman* his *wages* within two days after the termination of the agreement under which he was shipped . . . . Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned *without sufficient cause* shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court (emphasis added) . . . .

For purposes of this motion, the facts will be observed in the light most favorable to the party opposing summary judgment. The vessel will be assumed to have been on a "coasting voyage," each plaintiff will be assumed to have been "seamen," the bonus will be assumed to have been payable as "wages," and the refusal to make timely payment will be assumed to have been without sufficient cause.

On its face, § 596 appears to support plaintiffs' position fully. However, as defendants assert, the applicability of that statute is limited by 46 U.S.C.A. § 544:

> None of the provisions of sections 209–203, 542a, 543, 545, 546, 561, 562, 564–571, 574, 577, 578, 591–596, 600, 621–628, 641–643, 644, 645, 651, 652, 662–669, 701–709, 711, 713 of this title shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise, or voyage. June 9, 1874, c. 260, 18 Stat. 64; Mar. 3, 1911, c. 231, § 291, 36 Stat. 1167 (emphasis added).

Plaintiffs note that another version of above-cited statute, as set forth in the 1973 pocket part to the appropriate volume of the 1958 Edition of the United States Code Annotated, excludes § 596 from the body of § 544. Plaintiffs take this omission of § 596 from the text of § 544 to indicate a Congressional intent to remove § 544 as a limitation to the application of § 596. However, the court notes that both versions of § 544 refer to identical citations to the Statute at Large. No intervening modification of § 544 by any legislative action exists. It is apparent that the exclusion of § 596 from the body of § 544 was the result of a judgment made by the codifier of the United States Code, and not by any Congressional action. The Code is only prima facie evidence of the laws of the United States. 1 U.S.C. § 204(a). Where an inconsistency between the United States Code and the Statutes at Large appears, the Statutes at Large prevail over the Code. Stephan v. United States, 319 U.S. 423, 426, 63 S.Ct. 1135, 87 L.Ed. 1490 (1943).

In reaching its conclusion that the operation of § 596 is limited by virtue of § 544, the court is persuaded by the exhaustive statutory analysis of Judge Haynsworth in Gardner v. L. N. Danzler, 281 F.2d 719 (4th Cir. 1960).

The Shipping Commissioners' Act of 1872, 17 Stat. 262, provided for Commissioners whose function it was to supervise the signing and discharging of seamen on ships bound for foreign ports or between Atlantic and Pacific ports of the United States. The Act contained other protections for seamen, including the double wage penalty provisions which appears today, in amended form, as § 596.

By the Act of June 9, 1874, 18 Stat. 64, the progenitor of § 544, Congress manifested its intention that none of the provisions of the Shipping Commissioners' Act of 1872 should apply to "vessels engaged in coastwise trade," except to vessels on certain types of voyages:

> *Be it enacted . . .* That none of the provisions of an act entitled "An act to authorize the appointment of shipping commissioners by the several circuit courts of the United States to superintend the shipping and discharge of seaman engaged in merchant ships belonging to the United States, and for the further protection of seamen" shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise, or voyage.

As early as 1877 the United States Supreme Court recognized that the forebearer of § 544 was "an explicit declaration that Congress never intended" the earlier version of § 596 to "apply to vessels engaged in any part of the coasting trade," except that between the Atlantic and Pacific coasts. United States v. Grace Lothrop, 95 U.S. 527, 532, 24 L. Ed. 514 (1877). *See* Inter-Island Steam Navigation Co., Ltd. v. Byrne, 239 U.S. 459, 461, 36 S.Ct. 132, 60 L.Ed. 382 (1915).

In the Act of June 19, 1886, 24 Stat. 79, Congress permitted the use of Shipping Commissioners to sign and discharge seamen bound for coastal voyages, but only at the request of the master or owner of the vessel. See 46 U.S. C.A. § 563. Although a master or owner availed himself of the services of a shipping Commissioner, the Act of 1886 did not expressly extend all the protection given to foreign bound seamen under the Act of 1872, including the double wage penalty provision. Nor did the Act of August 19, 1890, 26 Stat. 320, which provided that certain provisions of the 1872 Act were applicable to coastal vessels shipping crews before Commissioners, expressly include the double wage penalty provision. The Act of 1890 was amended by the Act of February 18, 1895, 28 Stat. 667, to require that wages of seamen shipped under the conditions of the 1890 Act be paid within two days of the termination of the shipping agreement. The amendment did not, however, expressly extend the double wage penalty provision to seamen who were not timely paid.

As of the date of the Act of 1895, the provisions of the Shipping Commissioners' Act of 1872 were inapplicable to seamen unless, at the election of the master or owner, they were shipped by Commissioners. If shipped by a Commissioner, seamen had certain rights under the Act of 1872, but the right to double wage penalty provision was not among those rights.

It was not until the Act of December 21, 1898, 30 Stat. 755, that seamen shipped on coastal voyages before a commissioner were entitled to the double wage penalty provision. Although the Act of 1898 does not expressly contain the limitation that it applies to seamen on coastal voyages only if shipped by a Commissioner, there is no indication in the amendments of the 1898 Act that Congress intended to alter the pre-existing statutory scheme.

It is at this juncture that plaintiffs assert that the double wage penalty provision is applicable to seamen on all

coastal voyages. Essentially, plaintiffs contend that the Act of 1898 repealed by implication the progenitor of § 544, with the result that the double wage penalty provision of § 596 is fully applicable. Plaintiffs rely heavily on an excerpt from I Norris, The Law of Seamen, § 402 at 479 (3rd Ed. 1970):

§ 402. Coastwise Voyages. In general, the Shipping Commissioners Act of 1872, applied to all voyages. By the Act of June 9, 1874, Congress amended this Act in its entirety by providing that it should not apply to vessels engaged in the coastwise trade, except that between the Atlantic and Pacific coasts, or to the lake-going trade touching at foreign ports or otherwise, or to the trade between the United States and the British North American possessions. There the matter stood until 1898, when Congress amended RS 4529, by interpolating a provision for "coasting voyages" before the provisions for voyages between Atlantic and Pacific ports and foreign voyages. That is the present wording of the statute. It is clear, therefore, that if without sufficient cause, there is any refusal or neglect upon the part of the master or owner of a vessel in the coastwise trade to make payment to a seamen of his wages within two days after the termination of the agreement under which he has shipped or at the time the seaman is discharged, whichever happens first, a double wage penalty will be imposed. (footnotes omitted).

In support of that conclusion, Norris cites several cases. All of those cases are distinguishable from the cause at bar. In Yoffe v. Calmar S.S. Corp., 23 F.Supp. 629 (N.D.Cal.1938), the seaman had signed a shipping agreement, and the intended voyage was between ports on the Atlantic and Pacific coasts. Cotter v. Lucinda Clark, 94 F.Supp. 264 (E.D.Mo.1950) holds that a double wage penalty is not applicable because of § 544 under circumstances where a vessel is not engaged in coastwise trade. Mahar v. Gartland S. S. Co., 154 F.2d 621 (2nd Cir. 1946) merely held that the use of the words "coastwise voyage" in § 596 did not repeal § 544, for purposes of denying a seaman's claim for double wage penalty incident to "lake-going" trade. Gardner v. L. N. Danzer, *supra*, reached an opposite conclusion to that of Norris, and held that the Act of 1898 did not impliedly repeal the Act of 1874, the forbearer of § 544.

 Accordingly, the court finds that § 544 is a limitation on the application of § 596, with the result that plaintiffs are not entitled to the double wage penalty provision of § 596. The record does not reflect that the master or owner of the Bering Explorer did not avail themselves of 46 U.S.C.A. § 563 which permits the shipping of seamen before a Commissioner at the request of the master or owner.

Therefore, it is ordered:

1. That defendants' motion for partial summary judgment is granted.

2. That defendants' motion to require plaintiffs to post security for costs is denied. 28 U.S.C.A. § 1916.