**Stanley KOWALIK, Plaintiff,**

v.

**GENERAL MARINE TRANSPORT CORP., and VESSEL SAM BERMAN, Defendant.**

No. 75 Civ. 4110.

United States District Court, S. D. New York.

April 26, 1976.

Lebovici & Safir, New York City, for plaintiff.

Jared Stamell, New York City, for defendants.

## OPINION

FRANKEL, District Judge.

Plaintiff, a seaman employed for a time by defendant General Marine Transport Corp. as the engineer on various vessels, is suing for overtime wages allegedly owed him pursuant to the terms of the collective bargaining agreement between his union and his former employer. The action is brought both *in personam* against General American Transport Corp. and *in rem* against the vessel SAM BERMAN, one of the ships upon which plaintiff was employed.[1] Defendants have moved for summary judgment dismissing the complaint. There are no material issues of fact.

The motion for summary judgment rests upon the contention that section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), as construed by the Supreme Court, requires plaintiff to submit his wage claims to the grievance and arbitration procedures contained in the collective bargaining agreement between his union and defendant General Marine Transport Corp.[2] As a general rule, plaintiff concedes, an employee in a case to which § 301(a) applies may not sue his employer for alleged contract breaches unless remedies in the collective bargaining agreement have been exhausted or resort to such remedies is futile because the union is unfaithful in its duties of representation. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Suissa v. American Export Lines, Inc.*, 507 F.2d 1343, 1347 (2d Cir. 1974); *Freedman v. National Maritime Union*, 347 F.2d 167 (2d Cir. 1965). Plaintiff also concedes that the subject of his complaint is within the grievance-arbitration provisions of the collective agreement under which he worked.[3] He offers no sug-

1. A warrant of arrest was executed against the SAM BERMAN on December 19, 1975. On December 22, 1975, defendants posted a bond to discharge the warrant. By order dated January 9, 1976, plaintiff was preliminarily enjoined from arresting the SAM BERMAN or any other vessel on which he had worked as an employee of defendant General Marine Transport Corp.

2. "Suits for violation of contracts between an employer and a labor organization * * * may be brought in any district court of the United States having jurisdiction of the parties * * *."

3. Article II of the agreement between plaintiff's union, Local 333 of the National Maritime Union, AFL-CIO, and Marine Towing and Trans-

gestion that his union has failed to adequately represent him. But he maintains that, as a seaman, he has a right to bypass grievance and arbitration, invoke this court's admiralty jurisdiction, and sue for his wages under 46 U.S.C. § 596.[4] The court disagrees.

Plaintiff bottoms his position on the decision in *U. S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971). As stated by the majority (there were four dissenters; Mr. Justice Black concurred specially), the question was "whether the * * * method of collecting seamen's wages contained in 46 U.S.C. § 596 has been displaced by § 301 of the Labor Management Relations Act * * *." 400 U.S. at 352, 91 S.Ct. at 410, 27 L.Ed.2d at 460; see also *id.* at 357, 91 S.Ct. at 412, 27 L.Ed.2d at 463. Answering that question in the negative, the Court allowed the plaintiff seaman to come directly to court on his wage claim, bypassing the arbitration machinery in the collective bargaining agreement between his union and employer.

■ Because of another statute, 46 U.S.C. § 544, the decision in *Arguelles* does not support the suit of the plaintiff herein. Plaintiff's claims arise from work performed aboard vessels transporting oil in and among Stonington, Connecticut, Long Island Sound, New York Harbor and Piscataway, New Jersey. Vessels operating in such "coastwise trade" are excluded from the provisions of § 596 by § 544. With certain exceptions not relevant here, the latter provides that "[n]one of the provisions of sections * * * 591–596 * * shall apply to sail or steam vessels engaged in the coastwise trade * * *." Although the question is a close one, this court, as have most others confronted with the issue, concludes that the exemption has survived subsequent amendments of the Shipping Acts.[5] See, e.g., *Gardner v. The Danzler*, 281 F.2d 719 (4th Cir. 1960); *Peart v. Motor Vessel Bering Explorer*, 373 F.Supp. 927 (D.Alas.1974); *Kelley v. University of Hawaii*, 252 F.Supp. 273 (D.Hawaii 1966); *Jenkins v. The Texas Co.*, 1962 A.M.C. 2040 (E.D.Pa.1962); *McConville v. Florida Towing Corp.*, 321 F.2d 162, 167–68 (5th Cir. 1963). But see *Puamier v. Barge BT 1793*, 395 F.Supp. 1019, 1035 (E.D.Va.1974); 1 M. Norris, Law of Seamen § 402, at 479–80 (1970).

It is argued that § 596 did not create the seaman's right to sue and that the solicitude for seamen reflected in that statute serves to leave open the option given by *Arguelles*. The argument is not weightless, but the court finds it unpersuasive in the end.

■ The problem, as *Arguelles* reflects, is to assess the relative weights of pertinent statutory policies. Section 544, by removing people like plaintiff from the coverage of § 596 and other provisions, reflected a legislative judgment that, at least to this extent, coastwise seamen could be treated like other workers. The option of *Arguelles* should not be deemed to subsist as a kind of "common law" preference over the power-

---

portation Employers' Association, the association to which defendant General Marine Transport Corp. belongs, provides grievance and arbitration proceedings for "[a]ny grievance or dispute involving the interpretation or application of the terms of this agreement or its breach * * *."

4. "The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens * * *. Every master or owner who refuses or neglects to make payment in manner hereinbefore mentioned without sufficient cause shall pay to the seaman a day during which payment is delayed beyond the respective periods * * *."

5. Moreover, it is far from clear that plaintiff could sue defendant General Marine Transportation Corp. even if the vessels on which he worked were covered by § 596. Only masters and owners are liable under § 596. See *Page v. United States*, 177 F.2d 601 (9th Cir. 1949); *Peterson v. S. S. Wahcondah*, 235 F.Supp. 698 (D.La.1964). General Marine did not own the vessels upon which plaintiff worked; it merely supplied the crews. The owner was another, albeit apparently affiliated, corporation.

ful purposes of § 301. *Cf. Andrews v. Louisville & Nashville RR*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Cady v. Twin Rivers Towing Co.*, 486 F.2d 1335 (3rd Cir. 1973). A seaman like Kowalik, working in New York harbor and adjacent waters, never far from shore, is fairly governed by the strong policies supporting collectively agreed arbitral remedies. See *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 455, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

Plaintiff also argues that a decision for defendants will deprive him of his maritime lien, which the Supreme Court has said lasts as long as a plank of the ship remains. *Sheppard v. Taylor*, 30 U.S. 675, 710, 8 L.Ed. 269, 282 (1831). But this begs the question. If this could be a case for a lien, it would arise only if and when plaintiff can establish, in a permissible forum, that wages are owed to him.

Finally, plaintiff maintains that his action should be stayed pursuant to 9 U.S.C. § 3, rather than dismissed, if the court adopts defendants' position in other respects. But the case is clearly one where plaintiff has failed to state a claim upon which relief may be granted. Plaintiff himself has no arbitration agreement with anyone. His union does. The steps missing here are (1) his effort to proceed through the union, (2) the union's processing of his grievance, (3) a conclusion, one way or another, of the grievance-arbitration steps, or (4) a demonstrable failure by the union to do its duty. The fitting remedy now, when only speculation could forecast that a claim may some day come to exist, is dismissal. *Hubicki v. ACF Industries, Inc.*, 484 F.2d 519, 521–22 (3rd Cir. 1973).

Motion for summary judgment granted. Complaint dismissed. So ordered.