Stanley KOWALIK, Plaintiff-Appellant,

v.

GENERAL MARINE TRANSPORT
CORP. et al., Defendants-Appellees.

No. 151, Docket 76–7227.

United States Court of Appeals,
Second Circuit.

Argued Nov. 5, 1976.

Decided Feb. 14, 1977.

Herbert Lebovici, New York City (Lebovici & Safir, New York City, of counsel), for plaintiff-appellant.

Jared Stamell, New York City, for defendants-appellees.

Before MOORE, MANSFIELD and MESKILL, Circuit Judges.

MOORE, Circuit Judge:

Plaintiff, Stanley Kowalik, appeals from a judgment, granted in favor of defendants upon their motion for summary judgment (1) dismissing the complaint in an action for overtime wages and (2) releasing the bond posted by defendant General Marine Transport Corp. ("GMT") to discharge an attachment of the vessel SAM BERMAN obtained by plaintiff in said action.

In view of the dismissal of the complaint and to avoid a discussion of irrelevant generalities, it is incumbent upon us to examine plaintiff's specific allegations. Plaintiff alleges that on or about April 1, 1970, Marine Towing and Transportation Employers Association ("Employer"), on behalf of the defendant GMT, and others, and Local 333, United Marine Division, National Maritime Union (the "Union") "entered into a contract [the "Agreement"] of which the plaintiff was a third party beneficiary, providing for the payment of stated wages and overtime for work on vessels of the 'Employer' including the defendant"; that the contract (with one renewal) continued in effect until March 31, 1976; that the contracts provided for overtime from February 1, 1970 to April 1, 1975 at rates varying from $2.68 to $3.72; that plaintiff worked overtime "as defined in the contract" but only received straight time pay; that he worked on eight different vessels during this period; and that there is due and owing to him a total of $22,352.12.[1]

It is clear from the face of the complaint that plaintiff's claim derives from the Agreement between the Employer and the Union. The Agreement does not come to light except as attached to an affidavit of GMT's president and as referred to in the

1. The complaint sets out alleged overtime rates specified in the Agreement from February 1, 1970 to April 1, 1975 and the totals claimed to have been unpaid on eight vessels on which plaintiff worked during that period.

parties' statements of fact. Thus, plaintiff states (Pltf's Br., p. 2) that his "employment was covered by a collective agreement (Exhibit A) fixing the rates of pay to be paid for regular and overtime work . . . ." Plaintiff concedes that the "agreements fixing the rates of pay" provide for "adjustment of grievances and arbitration of such disputes not settled by agreement . . . ." (Pltf's Br., p. 3). Adjustment and Grievance Committees were specified and in the event of the failure to settle the controversy, arbitration procedures were provided.

Plaintiff, making no effort to comply with the terms of the Agreement, upon which he bases his overtime claim, sought to by-pass it entirely by seeking, as he calls it, "the seaman's traditional remedy in the District Court", namely, a suit *in personam* against GMT and a suit *in rem* against the SAM BERMAN.

On the motion for summary judgment the District Court found that "[t]here are no material issues of fact."[2] 411 F.Supp. 1325, 1326 (S.D.N.Y.1976) but it had to cope with several legal problems, such as, where the complaint discloses the agreement allegedly giving rise to the wage claim, does failure to allege submission of such claim to the grievance and arbitration procedures constitute a failure to state a claim and, must plaintiff allege a failure by his union adequately to represent him to give him standing in the courts? Furthermore, the effect of the Supreme Court's decision in *U.S. Bulk Carriers, Inc. v. Arguelles,* 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971) had to be considered.

The District Court recognized that the question of whether the "method of collecting seamen's wages contained in 46 U.S.C. § 596[3] has been displaced by § 301 of the Labor Management Relations Act . . ." had been answered in the negative by *Arguelles, supra,* at 352 and 357, 91 S.Ct. 409, but believed that *Arguelles* was not applicable here, because of the exclusion by 46 U.S.C. § 544[4] from the provisions of § 596 of vessels in coastwise trade—as was the SAM BERMAN.

Quite apart from the exclusionary provisions of § 544, it is quite obvious that § 596 does not apply to plaintiff's claim. Plaintiff does not allege termination of the agreement under which he was shipped. To the contrary, the Employer-Union Agreement, *i. e.,* the only basis for his claim, persisted and controlled his rights, if any, during the entire period. Until his overtime claim (and there is no allegation that any such claim was made at the end of any voyage) was made known or asserted, no master or owner could have paid or have failed to pay "within two days" any wages due. Obviously it required proceedings pursuant to the Agreement to establish the "due", if any.

Furthermore, plaintiff does not allege that he was not paid wages at the end of every voyage. The overtime claim concept apparently came into being in June 1975 as the result of an Employer-Union controversy.

**2.** This may be true as to jurisdictional questions; there would appear to be several factual issues as to the merits of the wage claim.

**3.** 46 U.S.C. § 596 provides, in pertinent part, as follows:

"The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; . . . and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court . . . ."

**4.** 46 U.S.C. § 544 provides, in pertinent part, as follows:

"None of the provisions of sections . ., 591–596, . . . of this title shall apply to sail or steam vessels engaged in the coastwise trade . . . ."

Plaintiff, however, does not stake his claim upon § 596. He asserts (Pltf's Br., p. 12) that: "[t]he libel nowhere asserts any rights pursuant to 596." Rather, he bases his claim on "the seaman's traditional right to sue for his wages in the Federal court" as a right deriving from Article III of the Constitution (giving jurisdiction to cases of admiralty). In short, he relies upon a traditional right of seamen since 1790 to have access to the federal courts. But this status does not obtain in this case. The very concept of "wages" depends upon some agreement, expressed or implied, with respect thereto. Plaintiff here specifically delegated the Union to act on his behalf. Having done so, he should adhere to the method selected by him to determine "wages". Until that step is taken, it would seem premature to debate enforcement procedures.

The District Court considered plaintiff's contention that in any event the action should be stayed pending arbitration rather than being dismissed. The Court was troubled by the fact that "only speculation could forecast that a claim may some day come to exist" and, since that day had not come and would not come until contract procedures determined the merits, if any, of plaintiff's wage claim, decided that "[t]he fitting remedy now . . . is dismissal." 411 F.Supp. at 1328.

Quite apart from statutes and decisions in other cases, it is important that the parties respectively receive the full benefits of their rights under the Agreement and any other rights to which they are justly entitled. Plaintiff is a member of the Union. The Union and the Employer have an Agreement respecting wages. Plaintiff asserts that he is "a third party beneficiary" of that Agreement and claims no independent relationship with the Employer. There would appear to be no just reason why plaintiff should obtain such wage benefits as the Agreement may provide but simultaneously repudiate the means specified in the Agreement for the determination thereof. Nor by the District Court's dismissal is plaintiff left without further

recourse. If he follows the Agreement's directions, his overtime claim can be decided on the merits; if his Union fails in its duty, such conduct may well be actionable. But the preservation of a lien on the SAM BERMAN can only be justified by a foundation therefor. As the District Court said: "If this could be a case for a lien, it would arise only if and when plaintiff can establish, in a permissible forum, that wages are owed to him." 411 F.Supp. at 1328. At this time, at least, this is not that forum.

Judgment affirmed. No costs.

MANSFIELD, Circuit Judge (dissenting in part):

In *U.S. Bulk Carriers, Inc. v. Arguelles,* 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971), the Supreme Court held that § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which provides for enforcement of grievance and arbitration provisions of collective-bargaining agreements, did not displace the earlier alternative method available to a seaman under 46 U.S.C. § 596, which permits him to sue directly for wages due, invoking federal jurisdiction under 28 U.S.C. § 1333. Thus the seaman was held to have been given an additional remedy which does not preclude his invoking the federal courts as traditional protectors of seamen's rights since 1790.

The majority agrees with Judge Frankel that *Arguelles* may be side-stepped in this case on the ground that 46 U.S.C. § 544 expressly precludes a coast-wise seaman, such as the plaintiff here, from availing himself of the rights granted by § 596 to trans-oceanic seamen to sue for penalty wages. Although this conclusion is in my mind far from certain, in view of the checkered legislative history of §§ 544 and 596, see *Gardner v. The Danzler,* 281 F.2d 719 (4th Cir. 1960), and a respectable argument may be made to the effect that coast-wise seamen have the right to invoke federal jurisdiction over a claim for wages, see *Mahar v. Gartland S.S. Co.,* 154 F.2d 621 (2d Cir. 1946), I do not believe it necessary to resolve that issue in this case. Whether or not a coast-wise seaman is relegated by

§ 301 to exhaustion of grievance and arbitration procedures for adjudication of his wage claims in line with the policy favoring arbitration, see *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *Republic Steel Co. v. Maddox,* 379 U.S. 650 (1965), 85 S.Ct. 614, 13 L.Ed.2d 580, he still has a time-honored right to obtain a maritime lien to secure his wage claims, which dates back to the Act of July 20, 1790, ch. 29, § 6, 1 Stat. 133, currently expressed in 46 U.S.C. §§ 603–604.[1] Nothing in the union's collective bargaining agreement with Kowalik's employer waives or modifies this right.

A seaman claiming wages is entitled, unless the ship's master shows that the wages claimed have been "paid or otherwise satisfied or forfeited," to obtain a court order directing issuance of process against the vessel, see 46 U.S.C. § 604. Otherwise the only security available for payment might sail out of the harbor beyond reach of the court's process before his claim had been reduced to an award or judgment, or the seaman might risk losing his lien by reason of subordination to other intervening creditors or the employer's bankruptcy. Rather than force the seaman to underwrite these risks, I would permit him to maintain the present action as one for enforcement of his lien to secure his wage claim and exercise the court's inherent power to stay the action pending the arbitration award. Indeed, implicit in the majority opinion is the concept that, once he had reduced his claim to an award through arbitration, he might invoke federal jurisdiction to enforce the award and his lien rights. I believe he has the right to perfect the lien before obtaining such an arbitration award, just as an *Arguelles* seaman would have the right to do so before reducing his wage claim to judgment.

---

1. Section 603 provides:

   "§ 603. *Summons for nonpayment*

   "Whenever the wages of any seaman are not paid within ten days after the time when the same ought to be paid according to the provisions of title 53 of the Revised Statutes, or any dispute arises between the master and seamen touching wages, the district judge for the judicial district where the vessel is, or in case his residence be more than three miles from the place, or he be absent from the place of his residence, then, any judge or justice of the peace, or any United States commissioner, may summon the master of such vessel to appear before him, to show cause why process should not issue against such vessel, her tackle, apparel, and furniture, according to the course of admiralty courts, to answer for the wages."

   Section 604 provides:

   "§ 604. *Libel for wages*

   "If the master against whom such summons is issued neglects to appear, or, appearing, does not show that the wages are paid or otherwise satisfied or forfeited, and if the matter in dispute is not forthwith settled, the judge or justice or United States commissioner shall certify to the clerk of the district court that there is sufficient cause of complaint whereon to found admiralty process; and thereupon the clerk of such court shall issue process against the vessel. In all cases where the matter in demand does not exceed $100 the return day of the monition or citation shall be the first day of a stated or special session of court next succeeding the third day after the service of the monition or citation, and on the return of process in open court, duly served, either party may proceed therein to proofs and hearing without other notice, and final judgment shall be given according to the usual course of admiralty courts in such cases. In such suits all the seamen having cause of complaint of the like kind against the same vessel may be joined as complainants, and it shall be incumbent on the master to produce the contract and log book, if required to ascertain any matter in dispute; otherwise the complainants shall be permitted to state the contents thereof, and the burden of proof of the contrary shall be on the master. But nothing herein contained shall prevent any seaman from maintaining any action at common law for the recovery of his wages, or having immediate process out of any court having admiralty jurisdiction wherever any vessel may be found, in case she shall have left the port of delivery where her voyage ended before payment of the wages, or in case she shall be about to proceed to sea before the end of the ten days next after the day when such wages are due, in accordance with section 596 of this title. This section shall not apply to fishing or whaling vessels or yachts."