Antonio CAMEAN, Jorge Neto and John Neto, Plaintiffs,

v.

The F/V LADY JAY and Pitriz Fishing Co., Inc., Defendants.

Civ. A. No. 84–695–MA.

United States District Court, D. Massachusetts.

March 13, 1985.

Scott W. Lang, William M. Straus, Lang, Straus & Bullard, New Bedford, Mass., for plaintiffs.

John A. Birknes, New Bedford, Mass., for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is an action by three fishermen seeking compensation from their employer. The plaintiffs maintain that the defendants breached a contractual agreement to compensate them for work performed during a fishing trip. The trip lasted from February 19, 1982 until March 1, 1982. This case is presently before the Court on the plaintiffs' motion for summary judgment under Fed.R.Civ.P. 56.

On the record before me, the material facts are not in dispute. The plaintiffs were crew members on the F/V LADY JAY when it embarked for Georges Bank on February 19, 1982. At the time, the plaintiffs' terms of employment were governed by a collective bargaining agreement in existence between the LADY JAY and the Teamsters, Chauffeurs, Warehousemen and Helpers, Local No. 59 Fishermen's Division. The LADY JAY fished for several days. By her master's estimation, they had taken in approximately 59,000 pounds of fish by February 28, 1982.

On March 1, 1982, the LADY JAY was boarded by a party from the United States Coast Guard Cutter VIGILANT. The LADY JAY was seized and escorted to Boston Harbor where she docked on March 2, 1982. The United States brought a civil action against the LADY JAY, her gear,

appurtenances and fishing catch for a violation of the federal conservation law, 16 U.S.C. § 1857. On March 2, 1982, the United States auctioned the LADY JAY's catch in Boston for $33,176.73. Subsequently, through a judgment in United States District Court, the United States withdrew its claim against the LADY JAY, and released the vessel to her owners, but retained the proceeds from the March 2 sale of the LADY JAY's catch. *United States of America v. F/V LADY JAY and Pitriz Fishing Corp.*, No. 82–0586–G (D.Mass. March 23, 1982) (Garrity, J.).

The compensation to which the plaintiffs were entitled for their labors was set forth in Article 28 of the collective bargaining agreement in effect at the time of the LADY JAY's seizure. The plaintiffs were entitled to a percentage of the value of the LADY JAY's total catch, or "lay." Agreement Art. 28.9. The lay is calculated by first deducting the employer's expenses from a vessel's gross stock proceeds. Agreement Art. 28.9, § C. The remaining amount is divided among the vessel's captain and crew. *Id.*

In the instant case, each of the plaintiffs seek their share of the gross stock proceeds resulting from the LADY JAY's trip from February 19, 1982 to March 1, 1982. The defendants maintain, however, that the plaintiffs are not entitled to any payments because the gross stock proceeds of that trip were forfeited to the United States. Accordingly, the defendants argue that the trip should be regarded as a "Broker" under Article 28.9, § E of the collective bargaining agreement. A Broker is a fishing trip which yields insufficient gross stock proceeds to cover both the employer's expenses and the crew's compensation adequately. The agreement describes what action is to be taken in the event of a Broker. *See* Agreement Art. 28, § E.

## DISCUSSION

The defendants have opposed the plaintiffs' motion for summary judgment on three grounds. Only one of the defendants' arguments challenges this Court's jurisdiction to hear this action. Specifically, the defendants maintain that this dispute should have been submitted to the "Grievance procedure" set forth in Article 16 of the collective bargaining agreement that was in existence at the time of the LADY JAY's seizure. That multi-step grievance procedure culminates in arbitration.

The defendants have raised a serious issue. Our national labor policy favors the arbitration of disputes concerning subjects governed by collective bargaining agreements. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 564, 578, 80 S.Ct. 1343, 1350, 4 L.Ed.2d 1403 (1960) and *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). It is well settled that where a collective bargaining agreement contains grievance and arbitration provisions, an individual employee must resort to these provisions before bringing a court action. *See generally* Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185; *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 658, 85 S.Ct. 614, 619, 13 L.Ed.2d 580 (1965); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co., supra*. Accordingly, under Section 301 of the LMRA, 29 U.S.C. § 185, a federal court does not have jurisdiction over an individual employee's action for breach of contract against his employer unless contractual remedies have been exhausted, or resort to those remedies would be futile because a union is unconscientious in its duties of representation. *Vaca v. Sipes, supra*, at 185, 87 S.Ct. at 914; *Republic Steel Corp. v. Maddox, supra*, at 653, 85 S.Ct. at 616. *See also Kowalik v. General Marine Transport Corp.*, 411 F.Supp. 1325, 1326 (S.D.N.Y.1976).

In the instant case, the plaintiffs acknowledge that this dispute has not been submitted to grievance or arbitration proceedings. Nevertheless, the plaintiffs

maintain that this action is properly before this Court. Relying on *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 91 S.Ct. 409, 77 L.Ed.2d 456 (1971), the plaintiffs argue that because this action involves a seaman's claim for wages, it is not necessary to exhaust contractual grievance and arbitration procedures before they bring an action against their employer in federal court. The plaintiffs also appear to imply that because they are fishermen, they have a traditional or historical right to bring their claim for compensation in this Federal Court. Neither of these theories, however, vests this Court with jurisdiction. Nor do they justify the plaintiffs' decision to bypass contractual grievance procedures and bring the instant breach of contract action.

▪ The plaintiffs claim they are exempt from the ordinary requirement that a dissatisfied employee exhaust contractual grievance procedures before bringing a federal court action because of the Supreme Court's holding in *U.S. Bulk Carriers, Inc. v. Arguelles.* In *Arguelles* the Supreme Court held that a seaman could bring an action for wages against his employer under 46 U.S.C. §§ 596 or 597 without first exhausting remedial procedures set forth in his collective bargaining agreement. *Arguelles, supra,* 400 U.S. 351, 356–57, 91 S.Ct. 412. The Court explicitly ruled that the remedial scheme established under Section 301 of the LMRA and case law could be reconciled with the distinct statutory provisions in the Federal Shipping Code which authorize a seaman's immediate lawsuit for wages owed. *Id.* at 357–58, 91 S.Ct. at 412–13.

In the instant case, however, the plaintiffs' reliance on the *Arguelles* exception is misplaced. *Arguelles* does not apply to the case at bar because the plaintiffs are not seeking wages under the statutory scheme

that was scrutinized in that case. In *Arguelles,* the Supreme Court focused on the remedy provided in the Federal Shipping Code, 46 U.S.C. § 596. Although that provision authorized a court action by "seamen," it specifically stated that "[t]his section shall not apply to *fishing* or whaling vessels or yachts." 46 U.S.C. § 596 (emphasis added). Furthermore, in August, 1983, the Federal Shipping Code was revised. Act of August 26, 1983, Pub.L. No. 98–89, 1983 U.S.Code Cong. & Ad.News (97 Stat.) 500 (codified at 46 U.S.C. §§ 2101–13101). Section 596 was replaced by two new provisions. Both Chapter 103 of the revised code which governs foreign and inter-coastal voyages and Chapter 105 which governs coast-wise voyages reiterate the restrictive language from Section 596: "[t]his subsection does not apply to a *fishing* or whaling vessel or a yacht." 46 U.S.C. § 10313(e), 46 U.S.C. § 10504(a) (emphasis added).[1]

In sum, the plaintiffs do not present the type of seaman's claim for wages that was sanctioned by the Supreme Court in *Arguelles.* Instead, their claim is for their deserved share of a fishing vessel's gross stock proceeds. Therefore, *Arguelles* may not be interposed as a reason for circumventing the grievance and arbitration procedures set forth in an applicable collective bargaining agreement.

▪ In *Kowalik v. General Marine Transport Corp.,* 550 F.2d 770 (2nd Cir. 1977), *cert. denied,* 434 U.S. 830, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977), the Second Circuit was faced with a similar case in which a seaman's claim for wages was not grounded in 46 U.S.C. § 596. As a result, the plaintiff in *Kowalik* was unable to invoke *Arguelles* to justify his decision to bypass contractual grievance resolution steps and proceed directly against his em-

---

**1.** The successor provisions to Section 596 contain additional language which indicates that the plaintiffs' instant claim for wages is not akin to the action allowed by the Supreme Court in *Arguelles.* Both Chapter 103 and Chapter 105 of the revised Shipping Code contain sections that state, "[t]his chapter does not apply to a vessel on which the seamen are entitled by custom or

agreement to a share in the profit or result of a voyage." 46 U.S.C. § 10301(b) and 46 U.S.C. § 10501(b). In the instant action, the plaintiffs' are seeking their deserved "lay" or share of the LADY JAY's gross stock proceeds. Given the clear language of the statute, their action is not within the purview of the Federal Shipping Code.

ployer in federal court. Nevertheless, the plaintiff in *Kowalik*, like the plaintiffs in the instant case, argued that the district court had jurisdiction to hear his claim for back wages under " 'the seaman's traditional right to sue for his wages in Federal court.' " 550 F.2d at 772.

The Second Circuit rejected the plaintiffs' argument. *Id.* Despite the history of federal admiralty jurisdiction dating back to 1790, the court ruled that the plaintiffs' claim for wages was governed by an effective collective bargaining agreement and should have been submitted to the grievance and arbitration machinery outlined in that agreement. According to the Second Circuit:

> The very concept of "wages" depends upon some agreement, expressed or implied, with respect thereto. Plaintiff here specifically delegated the Union to act on his behalf. Having done so, he should adhere to the method selected by him to determine "wages." Until that step is taken, it would seem premature to debate enforcement procedures.

*Id.* at 772.

The reasoning employed by the Second Circuit in *Kowalik* applies with equal force to the case at bar. The plaintiffs' compensation is determined through a formula set forth in Article 28 of their collective bargaining agreement. The instant dispute over payment of that compensation should be resolved through the grievance procedures established by the plaintiffs' union and the employer in Article 16 of that same agreement.

Finally, the plaintiffs have urged this Court not to recognize the defendants' argument that this matter should have been submitted to grievance and arbitration under the collective bargaining agreement. They maintain that this argument should have been raised earlier in the defendants' answer. The plaintiffs believe that allowing the defendants to raise this defense in their opposition to a summary judgment motion is prejudicial.

Contrary to the plaintiffs' view, however, the defendants argument cannot be ig-

nored. The exhaustion of contractual remedies issue raised by the defendants concerns this Court's jurisdiction to hear this action. *See Kowalik v. General Marine Transport Corp., supra,* 411 F.Supp. at 1326. Under the Federal Rules, Fed.R. Civ.P. 12(h)(3), arguments challenging this Court's subject matter jurisdiction may be raised at any time, by any party, or by the Court. Furthermore, the plaintiffs' are not prejudiced. They have an adequate remedy available. Under Article 16.1, § A of their collective bargaining agreement, a dispute involving wages under Article 28 such as the instant matter is not subject to the five day limitations rule. Accordingly, the plaintiffs will not be barred from submitting their claim to the grievance machinery or an arbitrator even though the disputed compensation was earned in 1982.

In light of the foregoing, the plaintiffs' motion for summary judgment is denied. Because this matter must be submitted to grievance and arbitration procedures established under the collective bargaining agreement, this Court lacks jurisdiction. Accordingly, the case is dismissed.

SO ORDERED.